**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Donald BOLDIN,
Defendant-Appellant.**

**No. 86–8443.**

United States Court of Appeals,
Eleventh Circuit.

June 5, 1987.

Glen Galbaugh, Decatur, Ga. (Court-appointed), for defendant-appellant.

Stephen S. Cowen, U.S. Atty., Steven R. Wisebram, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and LYNNE *, Senior District Judge.

HILL, Circuit Judge:

Appellant Charles Boldin was convicted by a jury on nine counts involving various drug-related charges, including racketeering, participation in a continuing criminal enterprise (CCE), importation of cocaine, and possession with intent to distribute cocaine. The most important issue raised by this appeal is whether Boldin's double jeopardy rights were violated by the government's use, in support of the CCE charge, of certain evidence which had also been introduced at the trial of a prior drug-related conspiracy for which he was acquitted. Boldin also argues that the evidence against him was insufficient to support his conviction on the CCE count and on the importation and possession with intent to distribute counts. Because we find that Boldin's double jeopardy rights were not violated and that the evidence was sufficient to sustain his convictions, we affirm the judgment on all counts.

## I. FACTS

At the trial of this case, the government introduced evidence that Boldin and several other persons actively assisted Harold Rosenthal and Jackie Wayne Scarborough in an ongoing scheme to import cocaine into the United States. During the first week of June 1982, Boldin participated in the importation of 640 pounds of cocaine flown into the Rockwood, Tennessee airport. One week later, Boldin and Dennis Wilson piloted a plane carrying an equally large

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

amount of cocaine into Tennessee from South America. Several weeks after a third load of cocaine was brought in by other participants, Boldin and Wilson again served as pilots to import a fourth load into Tennessee. Shortly thereafter, while trying to transport the cocaine from Tennessee to Florida, Scarborough and several others involved in the scheme were arrested by Drug Enforcement Administration authorities.

The evidence showed that after Scarborough's arrest, Boldin helped Rosenthal organize further drug transactions. In the late summer of 1982, Boldin recruited William Vicary to assist him in flying a plane to South America to import more cocaine. From Tampa, Florida they flew to Colombia, South America, where they met Rosenthal and picked up 15 or 16 duffel bags of cocaine. Their plane crashed during take-off and caught fire, but Boldin and Vicary escaped unharmed. Upon their return to the United States several days later, Boldin paid Vicary $10,000.

Shortly after the ill-fated attempt, Boldin convinced Vicary to fly a new plane to South America in return for a payment of $40,000. On October 5 or 6, 1982, Boldin, Vicary, and Dennis Wilson, Boldin's son-in-law, flew to Lafayette, Georgia where they met Larry Pace. Under Boldin's direction, Pace removed the seats from the airplane, and Wilson helped install a fuel bladder in the plane. Boldin then made several phone calls in an attempt to find someone to fly this plane with Vicary to South America, eventually locating John Luck in Atlanta. Using coordinates and instructions furnished by Boldin, Vicary and Luck flew to South America where they obtained approximately 700 pounds of cocaine from Rosenthal. They returned the illicit cargo to Crystal River, Florida.

Rosenthal and Boldin subsequently pressured Vicary to make another trip to South America, this time offering him $100,000. Boldin met Vicary, Pace, and John Moore in Lafayette, Georgia, and provided Vicary with coordinates for the trip. Vicary and Moore flew to Colombia where they picked up 633 pounds of cocaine. Upon their return to Lafayette, Vicary and Moore were arrested by federal agents. The agents also arrested the members of the ground crew consisting of Boldin, Luck, Pace, Lewis Crump, and Gene Easterling. At the time of his arrest, Boldin possessed an address book containing the name and telephone number of Sixtos Granados, Rosenthal's contact person in Colombia.

Boldin was originally indicted on October 28, 1982, for (1) conspiracy to import cocaine, 21 U.S.C. §§ 952, 963; (2) aiding and abetting the importation of cocaine, 21 U.S.C. § 952 and 18 U.S.C. § 2; (3) conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; and (4) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). The time frame specified in each charge ranged from a time unknown until on or about October 25, 1982. After a full jury trial, Boldin was convicted on count two, the importation charge, but was acquitted on the remaining three counts.

On January 19, 1984, a federal grand jury returned another multi-count indictment against Boldin and numerous other individuals involved in the cocaine importation scheme. The allegations against Boldin included RICO conspiracy and substantive charges (counts one and two), participation in a CCE (count eight), importation of cocaine on several different dates (counts nine, ten and eleven), possession with intent to distribute cocaine on two occasions (counts sixteen and eighteen), and two Travel Act violations (counts thirty-five and thirty-seven). Boldin moved to dismiss the RICO and CCE counts on double jeopardy grounds, but the district court and a panel of this court held that those charges were not barred by his prior criminal prosecution. *United States v. Boldin,* 772 F.2d 719 (11th Cir.1985) (*Boldin I*), *cert. denied,* —— U.S. ——, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986). Appellant then filed a motion *in limine* to suppress on the basis of collateral estoppel certain overt act evidence listed in the new indictment which

had been introduced at his prior trial.[1] The district court denied that motion. After all the evidence was presented, the trial court also denied in substantial part a similar motion to strike those acts in the indictment for want of proof.[2] The jury subsequently returned guilty verdicts against Boldin on nine of the ten counts, and this appeal followed.

## II. DISCUSSION

One of the counts for which Boldin was convicted charged him with engaging in a continuing criminal enterprise under 21 U.S.C. § 848 (1982). To prove a CCE, the government must show:

(1) a felony violation of the federal narcotics laws

(2) as part of a continuing series of violations

(3) in concert with five or more persons

(4) for whom the defendant is an organizer or supervisor

(5) from which he derives substantial income or resources.

*Boldin I,* 772 F.2d at 730. In disposing of Boldin's interlocutory appeal in this case, this court stated that "[a]ny section 846 conspiracy for which Boldin or Scarborough was subject to prior jeopardy cannot be used by the government in its present prosecution to satisfy the collaboration requirement of section 848 [CCE]." *Boldin I,* 772 F.2d at 731. Boldin argues that this admonition by the court, along with established double jeopardy principles, should have precluded the government from proving the CCE count through the use of

evidence which had been introduced at his trial on the prior conspiracy charges, for which he was acquitted. Accepting appellant's double jeopardy argument, participants Pace, Luck, and Vicary would be eliminated as possible collaborators.

Boldin's argument fails both in its attempt to interpret this court's opinion in *Boldin I* and in its application of established double jeopardy principles. First, appellant conveniently overlooks language in this court's previous opinion which runs contrary to his position:

As to Boldin, who was acquitted of the section 846 charge, the government is barred from using that conspiracy charge in its evidence as satisfaction of the predicate offense requirement of section 848. The government may, however, use Boldin's conviction for importation as a predicate section 848 offense. The section 848 count as to Boldin, therefore, is not barred simply because he was charged with but acquitted of the 846 charge.... We hold that the double jeopardy clause does not bar the government's present prosecution of Boldin and Scarborough under section 848.

*Boldin I,* 772 F.2d 731–32. Thus, this court clearly did not hold, as Boldin asserts, that any fact which may have been mentioned in his prior trial is automatically excluded on double jeopardy grounds because he was acquitted of the earlier conspiracy charge. Instead, the court specifically allowed the government to use Boldin's conviction for importation, obtained at the same trial which produced his acquittal for conspiracy, as part of the government's proof of the CCE count. This court's *Bol-*

---

1. Specifically, Boldin sought to exclude the following evidence:

    Overt Act 76: on or about October 5, 1982, Boldin and Pace flew into Lafayette, Georgia in a Piper Navajo aircraft, N808PC;

    Overt Act 77: on October 5, 1982, Carl Larry Oliver, accompanied by Charles D. Scott, travelled to the Lafayette, Georgia airport and met Boldin and Pace;

    Overt Act 78: on or about October 6, 1982, Vicary, Wilson, and Boldin flew to Lafayette, Georgia from Detroit, Michigan;

    Overt Act 79: on October 6, 1982, Boldin, Wilson, and Pace installed a rubber gas bladder in the Piper Navajo aircraft, N808PC;

    Overt Act 80: on or about October 6, 1982, Vicary, Boldin, and Wilson flew from Lafayette, Georgia to Atlanta, Georgia in the Piper Navajo aircraft, N808PC, picked up Luck, and flew to Tampa, Florida.

2. The district court granted Boldin's motion to strike as to Overt Act 77, *see* n. 1 *supra,* which alleged that Boldin and Pace met with Oliver and Scott at the Lafayette, Georgia airport. The trial judge presumably held that this evidence was barred on collateral estoppel grounds by Boldin's acquittal in his prior conspiracy trial.

*din I* opinion, therefore, did not require the blanket exclusion of all evidence presented at appellant's first trial; when understood in context, it merely required a traditional collateral estoppel analysis in determining what evidence could be introduced against Boldin in the present proceeding.

▆▆▆▆ Applying that collateral estoppel analysis, it is clear that the trial court did not err in admitting the challenged evidence. The criminal collateral estoppel doctrine, embodied in the fifth amendment guarantee against double jeopardy, provides that "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment in a criminal case, it cannot again be litigated between the same parties." *United States v. Hogue*, 812 F.2d 1568, 1578 (11th Cir.1987); *see also Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). For estoppel to apply in a subsequent criminal prosecution, "the fact sought to be foreclosed by defendant must necessarily have been determined in his favor in the prior trial; it is not enough that the fact *may* have been determined in the former trial." *United States v. Irvin*, 787 F.2d 1506, 1515 (11th Cir.1986) (emphasis in original). If the court concludes that a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose, then collateral estoppel does not apply. *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194. Moreover, the defendant bears the burden of proving by convincing and competent evidence that the fact sought to be foreclosed was necessarily determined against the government in the prior trial. *Hogue*, 812 F.2d at 1578.

Boldin's argument fails to satisfy this "necessity test." He makes no showing that the evidence relating to overt acts 76, 78, 79 and 80 was necessarily determined against the government by the first jury when it acquitted him of the conspiracy charges. The challenged overt act evidence all involved conduct in furtherance of the drug importation scheme. Proof of a conspiracy charge, however, requires more than just evidence of the overt acts of its alleged members. While the first jury might have based its acquittal of Boldin upon a rejection of this overt act evidence, it need not necessarily have done so.[3] His acquittal could just as easily have been based upon the lack of proof of an unlawful agreement among the alleged conspirators. Thus, the mere fact that the evidence which Boldin seeks to exclude in this case was introduced at his prior trial does not automatically trigger the application of the collateral estoppel doctrine. Because Boldin has not shown that the challenged evidence was necessarily determined in his favor at his prior trial, he is not entitled to relief on double jeopardy grounds.[4]

▆▆▆▆ Boldin also argues that the government's evidence was insufficient to establish that he organized, supervised, or managed five or more persons, as required by the CCE statute. Boldin claims that the evidence at trial showed that he was "at best a lieutenant or minion in the enterprise," Appellant's Brief at 32, and not the type of "kingpin" that the CCE statute was intended to reach. We disagree with appellant's contentions. Under section 848, the same type of superior-subordinate relationship need not have existed between the defendant and each of the other five persons, and the requisite five persons need not have acted in concert at the same time.

---

**3.** In fact, no overt act need be alleged or proved in a prosecution for conspiracy under 21 U.S.C. § 846 (1982). *United States v. Middlebrooks*, 618 F.2d 273, 278 n. 6 (5th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980) (citations omitted). The essence of a conspiracy under section 846 is an unlawful agreement, *i.e.* knowing participation with others to bring about a common goal. *Id.* at 278. Standing alone, proof that a defendant may have intentionally aided or participated in a criminal act is not sufficient to establish a conspiracy. *Id.* Thus, evidence at the first trial of Boldin's participation in certain overt acts would not have been enough to prove his involvement in a section 846 conspiracy.

**4.** It should be noted that the jury in the first trial *convicted* Boldin of aiding and abetting in the importation of cocaine. This is a strong indication that the challenged overt acts were actually determined in favor of the government. At the very least, it indicates that these facts were not necessarily determined against the United States.

*United States v. Phillips*, 664 F.2d 971, 1034 (5th Cir. Unit B 1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). More important, the government is not required to prove that the defendant was the "single ring-leader" of the enterprise. *Id.* Thus, when viewed in the light most favorable to the government, the evidence in this case was sufficient to establish Boldin's position as an organizer, supervisor, or manager of at least five of the named individuals.[5]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**5.** Boldin makes two final arguments. First, as to the CCE count, he contends that there was insufficient evidence to show that he derived substantial income or resources from the smuggling operation. Second, he claims that the evidence was insufficient to support his conviction on two counts of importing cocaine (counts 10 and 11) and one count of possession of cocaine (count 18). We have carefully considered these arguments, and find them to be without merit.