The UNITED STATES

v.

David AGUILAR, Gary Austin, Norman Bennett, Frank C. Boersig, Anastacio H. Cavazos (a/k/a Tacho), Larry Michael Farber (a/k/a Mike), Norman Farber, Nora Juliao (a/k/a Nora Jimeno, Cheryl Jimeno), John Robert Kelleher (a/k/a Irish), Ray Lapoint, Robert Lee (a/k/a Bob Lee, Chinaman), Kenneth Eugene Roberts, Ramon Sosa, John Spagnoli, Frank Torchia, Jeff Wilson.

Appeal of Ramon SOSA.

No. 87–3285.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1987.

Decided March 31, 1988.

Sally A. Frick (argued), Pittsburgh, Pa., for appellants.

J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., W.D. Pa., Pittsburgh, Pa., for appellee.

Before WEIS, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal concerns criminal convictions for criminal conspiracy, in violation of 21 U.S.C. § 846 (1982); for possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982); and for engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Supp. IV 1986) (recodification, with subsequent amendments). Our primary concern is appellant's attack upon his CCE conviction.[1] He, an admitted drug

---

1. Appellant Ramon Sosa raises four other contentions on this appeal: (1) that police officers, without giving Sosa an additional *Miranda* warning, asked him a seemingly routine question (to give them his telephone number) that was actually designed to elicit incriminating information, such that his answer and the fruits thereof were illegally admitted into evidence against him; (2) that his successive state and federal prosecutions, convictions and penalties for possessing cocaine constitute double jeopardy in violation of the Constitution; (3) that the district court's refusal to consider *ex parte* a co-defendant's request for an appointed expert to testify to, and its more general refusal to permit testimony concerning, the effects of drug abuse on witnesses' abilities to testify truthfully constitutes a denial of due process; and (4) that

supplier, argues that the evidence at trial was insufficient to prove that there were five or more persons "with respect to whom [he] occupie[d] a position of organizer, a supervisory position, or any other position of management...." 21 U.S.C. § 848(d)(2)(A). At trial, before the case was submitted to the jury, this argument was the basis of appellant's motion for judgment of acquittal pursuant to Fed.R. Crim.P. 29(a). The district court denied this motion twice initially, Joint Appendix of Appellants ("JA") at 2114A, 2128A, and twice upon reconsideration.[2] *Id.* at 2219A, 2286A–87A. Because we conclude that the evidence of this element of the statutory crime was sufficient to support appellant's CCE conviction, we will affirm the district court's denial of the motion for judgment of acquittal. We will also affirm its judgment of conviction and sentence in all other respects.

## I.  BACKGROUND

Appellant Ramon Sosa was involved in a conspiracy that brought sizeable quantities of cocaine from Florida to Pittsburgh, Pennsylvania and, through Pittsburgh, to various other cities throughout the United States. Although Sosa's role was primarily to supply the cocaine at the Florida end of the network, he made at least one cocaine-related trip to Pittsburgh and, on October 14, 1984, he was arrested in a Rosemont, Illinois hotel by undercover federal agents. At the time of Sosa's arrest, one of his companions had in his possession nine packages of cocaine and a large amount of cash. The cocaine and the money had been transported into the hotel in a box that Sosa carried on his shoulder.

Sosa ultimately was tried, along with six codefendants, before a jury in the United States District Court for the Western District of Pennsylvania. The jury convicted Sosa on one count of conspiracy, one CCE count and ten counts of possession with intent to distribute cocaine. The district court, citing Sosa's "major contribution to a nationwide cocaine conspiracy," JA at 2494A, sentenced him to a 25–year prison term for the CCE conviction.[3]

## II.  SUFFICIENCY OF THE EVIDENCE SUPPORTING SOSA'S CCE CONVICTION

Although Sosa did not testify in his own defense at trial, he admits to this Court that he, "as the source of supply, provided cocaine to the[ ] couriers" who worked for other members of the distribution network. Brief for Appellant at 27. He claims, however, that he "never discussed the arrangements with others and had no control over any of the couriers or any of the arrangements. In fact, [Sosa argues,] the evidence does not preclude the finding that [he] was acting solely as a courier himself." *Id.* He claims, in short, that no evidence at trial indicated that there were "five or more other persons with respect to whom [he] occupie[d] a position of organizer, a supervisory position, or any other position of management," 21 U.S.C. § 848(d)(2)(A), which is a central element of the statutory CCE crime.

On direct appeal from a criminal conviction, we apply a standard of review to sufficiency of evidence claims that is quite deferential. *See, e.g., United States v. Messerlian,* 832 F.2d 778, 796 (3d Cir.1987),

---

he was illegally sentenced to separate sentences on his CCE conviction and on his convictions for predicate offenses thereto. Sosa has also joined all applicable claims raised by the appeals of his co-defendants. We find no merit in any of these contentions.

2. In short, the litigation of this claim has been in accord with "the settled practice of testing evidentiary sufficiency through a motion for judgment of acquittal and a postverdict appeal from the denial of such a motion." *Jackson v. Virginia,* 443 U.S. 307, 317–18 n. 10, 99 S.Ct. 2781, 2788, n. 10, 61 L.Ed.2d 560 (1979).

3. In addition, on each of the ten possession counts, the district court sentenced Sosa to a prison term of 15 years, such terms to run concurrently with each other and with his 25-year prison term on the CCE. JA at 2515A (Judgment and Probation/Commitment Order). In addition to these concurrent prison sentences, the district court also imposed a special parole term of 15 years. *Id.* Finally, the district court also suspended imposition of sentence on Sosa's conspiracy conviction. *Id.*

*petition for cert. filed,* 56 U.S.L.W. 3516 (U.S. Feb. 2, 1988) (No. 87–1191, filed Jan. 14, 1988); *United States v. Martorano,* 709 F.2d 863, 866–67 (3d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In the course of conducting this inquiry, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (original emphasis). Thus, when we are faced "with a record of historical facts that supports conflicting inferences[, we] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and [we] must defer to that resolution." *Id.* at 326, 99 S.Ct. at 2793. Nevertheless, "a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm." *Id.* at 314, 99 S.Ct. at 2786; *see, e.g., Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

Sosa's argument turns upon the nature of his relationships, via the continuing criminal enterprise, with others in the cocaine distribution network. These relationships must be judged according to the statutory requirement that one occupy "a position of organizer, a supervisory position, or any other position of management...."

21 U.S.C. § 848(d)(2)(A). With no concern to slight "managers," we have previously called this element the "organizer or supervisor" requirement. *E.g. United States v. Fernandez,* 822 F.2d 382, 384 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 450, 98 L.Ed.2d 391 (1987). We have also called it a "numerosity requirement...." *Id.* at 386. Whatever its proper label may be, however, this statutory element of the CCE crime is an obvious manifestation of Congress's concern to fight the growth of "large-scale profit-making [drug] enterprises ...," *United States v. Valenzuela,* 596 F.2d 1361, 1367 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979), for "[t]he language under consideration was clearly chosen to distinguish minor enterprise 'employees' from those who conceive and coordinate enterprise activities." [4] 596 F.2d at 1367–68.

Our review of the trial record indicates that the evidence, viewed in the light most favorable to the government, shows that Ramon Sosa occupied the proscribed kind of position in relation to the requisite number of people. Henry A. "Butch" Bennett testified that Sosa regularly supplied the packages of cocaine that Bennett transported from Florida to Pittsburgh. Sosa supplied this cocaine to Bennett on credit. Bennett would transport the cocaine to Pittsburgh, where he would "cut" and sell it. Bennett would then return to Florida, where he would repay Sosa and take another shipment of cocaine, on credit, to Pittsburgh. On at least one occasion, when Bennett was unable to repay Sosa within a short period of time, Sosa travelled to Pittsburgh and reclaimed cocaine that he previously had supplied. Such evidence is clearly sufficient to demonstrate that Sosa supervised Bennett in the course of the criminal enterprise.[5] There was also sufficient

---

4. *Accord, e.g., United States v. Benevento,* 836 F.2d 60, 71 (2d Cir.1987) (CCE statute applies to one who "coordinated or managed five or more persons in the conduct of the enterprise"); *United States v. Lewis,* 759 F.2d 1316, 1331 (8th Cir.) (one who plays "a sufficiently central role" in the enterprise), *cert. denied sub nom. Milburn v. United States,* 474 U.S. 994, 106 S.Ct. 406–07, 88 L.Ed.2d 357 (1985); *United States v. Mannino,* 635 F.2d 110, 117 (2d Cir.1980) (one who per-

forms "[an] essential function" in the enterprise); *United States v. Johnson,* 575 F.2d 1347, 1358 (5th Cir.1978) (one who occupies "a position of superiority" within the enterprise), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979).

5. These transactions were, in effect, sales on consignment. Each member of the conspiracy was thus dependent on his source's indul-

evidence that Sosa managed the activities of David Stadtfeld, who, at a time when Bennett had been warned that he was "too hot," accompanied Bennett to Florida and acted as the cocaine courier on the return trip. *See generally Fernandez,* 822 F.2d at 386 (approving CCE jury instruction that "it is not required that the defendant had personal contact with each of the five or more persons").

The government also identifies Manuel Diaz and Oscar Pintos as individuals who were supervised, managed or organized by Sosa in the course of the enterprise. Diaz and Pintos were arrested with Sosa in Rosemont, Illinois. The trial evidence was sufficient to support an inference that they accompanied Sosa on this trip to assist him in making a major drug deal.

The fifth individual identified by the government as being under Ramon Sosa's management or supervision is Maria Del Carmen Sosa, his wife. Sosa, who emigrated to the United States from Cuba, spoke little or no English at the time he was supplying cocaine to this network. Bennett testified that Sosa therefore brought his wife along to meetings, where she served as his translator. This evidence was sufficient to support an inference that Ms. Sosa was her husband's underling for purposes of the cocaine enterprise. *See United States v. Zanin,* 831 F.2d 740, 744 (7th Cir.1987) (affirming husband's CCE conviction where evidence indicated that wife "often appeared to operate under [his] direction"); *United States v. Stratton,* 779 F.2d 820, 827 (2d Cir.1985) ("Government's proof showed that [wife] attended meetings at which the conspirators discussed their

plans and acted as a courier for her husband.... In light of [his] dominant position ... in the overall scheme, the jury was entitled to infer that, in making drug-related payments, [wife] was acting at her husband's direction."), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 *and sub nom. Parness v. United States,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986).

In sum, the evidence at trial that Sosa managed, supervised or controlled these five individuals was sufficient to support his CCE conviction.[6] "The evidence may not show that [Sosa] conducted the activities with the regimentation of a G3 Section in the United States Army, but it does show that he organized, supervised and managed the activities of [at least five] other persons." *United States v. Johnson,* 575 F.2d 1347, 1358 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

## III. CONCLUSION

For the foregoing reasons, as to the CCE, we will affirm the district court's denial of appellant's motion for judgment of acquittal. We will also affirm the district court's judgment of conviction and sentence in all other respects.

---

gence in allowing him the opportunity to sell his consignment to obtain the money to pay for the supply, and in turn dependent on sales or re-sales to others to provide the money needed to pay the supplier and obtain future consignments.
*United States v. Adamo,* 742 F.2d 927, 932–33 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *contra United States v. Jones,* 801 F.2d 304, 308 (8th Cir.1986) ("simply fronting drugs to five or more persons does not amount to controlling those persons and thus cannot support [a] conviction under the CCE statute").

6. We note that the district court, in the course of considering Sosa's motion for judgment of acquittal, commented upon Sosa's inability to cite a federal decision reversing a CCE conviction because the numerosity evidence was insufficient. Our independent research has located only one such instance, which was decided after oral argument in this appeal. In *United States v. Benevento,* 836 F.2d 60 (2d Cir.1987), however, the judgment that the evidence of coordination or management of five individuals was insufficient to support a CCE conviction turned upon the fact that the government conceded the issue. *Id.* at 71–72.