**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edward WITEK; Reginal M. Hardy, a/k/a "Reggie", a/k/a "Pumpkin"; Ralston Randolph Wright, a/k/a "Thomas Theodore Dooley"; Tommie Dixon; John Horace Dixon, a/k/a "Bea"; Earl A. Green; George Calhoun; Claudette Colleen Hubbard; Alfred Bain, Defendants–Appellants.**

No. 92–3135.

United States Court of Appeals,
Eleventh Circuit.

Aug. 17, 1995.

Mark H. Randall, Longwood, FL, for Witek.

Michael W. Nielsen, Dowdy & Nielsen, Winter Springs, FL, for Hardy.

Theresa Anderson, Abeles & Anderson, P.A., DeBary, FL, for Wright.

Christopher L. Smith, Winter Springs, FL, for Dixon.

Mark M. O'Mara, Winter Park, FL, for John Dixon.

Albert F. Tellechea, Orlando, FL, for Green.

Michael L. Irwin, Orlando, FL, for Calhoun.

Vincent W. Howard, Jr., Howard & Reyes, Chartered, Sanford, FL, for Bain.

Alexander Zouzoulas, Zouzoulas & Wheeler, P.A., Lori Wheeler, Orlando, FL, for Hubbard.

Cynthia Hawkins, Asst. U.S. Atty., Orlando, FL, Tamra Phipps, Kathy J.M. Peluso, Asst. U.S. Attys., Tampa, FL, for U.S.

Before DUBINA and BLACK, Circuit Judges, and COHILL\*, Senior District Judge.

BLACK, Circuit Judge:

Appellant Ralston Wright was convicted of engaging in a continuing criminal enterprise (CCE) under 21 U.S.C.A. § 848 (West Supp. 1995). We must decide whether the Government presented sufficient evidence to prove Wright's guilt beyond a reasonable doubt.[1] We conclude that it did not, and vacate Wright's CCE conviction.

## I. BACKGROUND

In late 1991 and early 1992, Ralston Wright and his girlfriend, Appellant Claudette Hubbard, sold narcotics from their residence in Cocoa, Florida. Wright and Hubbard would obtain powdered cocaine and marijuana in Dallas, Texas, process most of the cocaine into cocaine base (crack), and then sell the drugs to customers in and around the Cocoa area. Wright and Hubbard's initial supplier was Thomas Semple, but they switched their source to Paul Ohaegbu in March 1992. Ohaegbu entered into a plea agreement with the Government and testified against Wright and Hubbard.

Wright and Hubbard's primary customers were street dealers who operated in and around Cocoa. They included Appellants Alfred Bain, George Calhoun, John Dixon, Tommie Dixon, Earl Green, Reginal Hardy, and Edward Witek; and cooperating witnesses Barbara Chelewski, Siricia Mitchell, and Charles Williams. Generally, sales were negotiated over the phone using code words common to the drug trade. Wright or Hubbard usually delivered the drugs to their buyers at the customer's residence or at some mutually arranged location. Sales were at the going market price and often involved "fronting"—allowing the customer to pay for the drugs after delivery.

In 1992, Wright was arrested and charged with: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine

base in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848; (3) possession with intent to distribute cocaine hydrochloride in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(C); (4) unlawful use of a communication facility in the commission of a felony in violation of 21 U.S.C. § 843(b); and (5) use of firearms during and in relation to drug trafficking crimes in violation of 18 U.S.C. §§ 2 and 924(c). At trial, Wright's motion for judgment of acquittal was denied and the jury found him guilty on all counts. The district court sentenced Wright to life for the conspiracy and CCE convictions, concurrent twenty and four-year terms for possession and unlawful use of a communication facility, and consecutive five-year enhancements for use of a firearm. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

■ We review the sufficiency of the evidence *de novo*. *United States v. Lyons*, 53 F.3d 1198, 1200 (11th Cir.1995). In doing so, we view all the evidence, and make all logical inferences, in the light most favorable to the government. *United States v. Waymer*, 55 F.3d 564, 570 (11th Cir.1995). When reviewing the sufficiency of the evidence, we must uphold a conviction if a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* Of course, statutory interpretation is a question of law reviewed *de novo*, *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 237 (11th Cir.1995), and a criminal conviction cannot rely on conduct which the statute did not intend to prohibit.

### B. Wright's CCE Conviction

■ In order to convict a defendant for engaging in a continuing criminal enterprise, the government must show:

---

\* Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. After carefully considering the other arguments raised on appeal, we conclude that they are without merit and do not discuss them. *See* 11th Cir.R. 36–1.

(1) a felony violation of the federal narcotics laws

(2) as part of a continuing series of violations

(3) in concert with five or more persons

(4) for whom the defendant is an organizer or supervisor

(5) from which he derives substantial income or resources.

*United States v. Church*, 955 F.2d 688, 695 (11th Cir.) (quoting *United States v. Boldin*, 818 F.2d 771, 774 (11th Cir.1987)), *cert. denied*, —— U.S. ——, 113 S.Ct. 233, 121 L.Ed.2d 169 (1992). Wright argues that the Government did not adequately demonstrate that he organized or supervised five or more persons as required by the statute. The Government responds that Wright organized or supervised (1) Hubbard, (2) Ohaegbu, and (3) his street-dealing customers, most notably Bain, John Dixon, Tommie Dixon, and Witek.[2]

■ Section 848(c), which defines a continuing criminal enterprise, requires the government to demonstrate that the defendant "occupies a position of organizer, a supervisory position, or any other position of management" with respect to five other persons engaged in the illegal drug trade. 21 U.S.C.A. § 848(c)(2)(A). This management requirement is disjunctive, allowing the government to meet its burden by showing the defendant functioned "as an organizer *or* a supervisor *or* any other type of manager." *Church*, 955 F.2d at 696 (emphasis in original). Three broad considerations influence our interpretation of the management requirement. First, we must give § 848 a "common-sense reading." *Garrett v. United States*, 471 U.S. 773, 781, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764 (1985); *Church*, 955 F.2d at 696. Second, we must recall that the statute "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett*, 471 U.S. at 781, 105 S.Ct. at 2413. *See United States v. Draine*, 811 F.2d 1419, 1422 (11th Cir.) (stating that § 848 intended to punish "substantial opera-

tions"), *cert. denied*, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987). Third, where it is unclear whether particular conduct is prohibited by ambiguous terms in a criminal statute, the rule of lenity requires us to construe that statute narrowly. *United States v. Kozminski*, 487 U.S. 931, 952, 108 S.Ct. 2751, 2764, 101 L.Ed.2d 788 (1988); *United States v. McLemore*, 28 F.3d 1160, 1165 (11th Cir. 1994).

■ It is unnecessary to restate every rule this Court applies when examining § 848's management requirement. *See, e.g., Church*, 955 F.2d at 696–97; *Boldin*, 818 F.2d at 775–76; *Draine*, 811 F.2d at 1420–21; *United States v. Bascaro*, 742 F.2d 1335, 1356–57 (11th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 3477, 87 L.Ed.2d 613 (1985); *United States v. Phillips*, 664 F.2d 971, 1012–13 (5th Cir. Unit B 1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). At the outset, however, we must make clear what should be obvious from the statute's text: A mere buyer-seller relationship does not satisfy § 848's management requirement. We thereby join with every circuit to consider the issue. *See United States v. Ward*, 37 F.3d 243, 247 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995); *United States v. Smith*, 24 F.3d 1230, 1234 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 270, 130 L.Ed.2d 188 (1994); *United States v. Delgado*, 4 F.3d 780, 787 (9th Cir.1993); *United States v. Butler*, 885 F.2d 195, 201 (4th Cir.1989). A contrary interpretation would do violence to the common-sense meaning of the words "organizer" and "supervisor" and extend § 848's reach beyond the scope Congress intended. Congress knew how to proscribe the mere selling of narcotics when they adopted § 848, *see* 21 U.S.C.A. § 841(a) ("it shall be unlawful ... to ... *distribute, or dispense*") (West 1981), but did not do so in § 848.[3] We must assume that the use of different language in § 848 was the result of a deliberate choice by Congress.

---

**2.** At oral argument the Government suggested that Wright also organized or supervised Thomas Semple. We find no evidentiary basis for this suggestion and do not discuss it.

**3.** Sections 841 and 848 were both enacted as part of Controlled Substances Act of 1970, Pub.L. No. 91–513, Title II, §§ 401, 408, 84 Stat. 1242 (1970).

With these principles in mind, we examine the record to determine whether Wright served as an organizer or supervisor of five or more persons connected to the drug conspiracy in this case.

### 1. Hubbard.

█ Wright insists that Hubbard was at least his equal, and therefore could not be managed or supervised within the meaning of § 848. Although much of the evidence suggests an equal partnership between Wright and Hubbard, that would not prevent the jury from inferring that, at least on some occasions, Wright organized or supervised Hubbard. Section 848 does not require the Government to prove that Wright was the only, or even the dominant, organizer of the Wright–Hubbard operation. *See Church,* 955 F.2d at 696. Nor does it require the Government to prove that Wright *controlled* Hubbard, because an organizer does not necessarily control those people he organizes, but simply arranges their activities into an orderly operation. *Id.* (quoting *United States v. Apodaca,* 843 F.2d 421, 426 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988) and *United States v. Ray,* 731 F.2d 1361, 1367 (9th Cir. 1984)).

█ The Government presented enough evidence for the jury to conclude that Wright organized Hubbard's activities within the meaning of § 848. While on a drug-buying trip to Dallas, Wright called Hubbard with instructions to collect money from Tommie Dixon. Hubbard agreed and placed two calls to Dixon asking for payment. Hubbard made other calls for Wright to tell Ohaegbu when to expect Wright in Dallas. Finally, when Charles Williams could not find Wright at an agreed meeting place, Hubbard assisted Wright by directing Williams to the correct location. The evidence is not overwhelming, and could support a conclusion that Wright and Hubbard were equal partners. Nevertheless, viewing the evidence in the light most favorable to the Government,

the jury could have believed that this evidence demonstrated that Wright sometimes organized Hubbard's illegal activities.

### 2. Ohaegbu.

█ Wright contends that Ohaegbu's role as a narcotics broker does not support a finding that Wright organized or supervised him in any way. We agree. Although there may be cases where a narcotics buyer organizes or supervises his supplier within the meaning of § 848, this is not such a case.

> Every legitimate retail store makes arrangements with its regular suppliers. In one sense it may be said to organize its supply, but does it organize its suppliers? Surely not in the sense of being a manager of its suppliers. To be an organizer within the sense of the statute more is required than simply being a steady customer.

*United States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir.1991). *See also Delgado,* 4 F.3d at 784. Wright's steady purchases of Ohaegbu's drugs, standing alone, does not satisfy the management requirement of § 848.

█ A review of the record uncovers no additional evidence from which to infer that Wright organized Ohaegbu's activities. Although Ohaegbu picked up and dropped off Hubbard at the airport on her request,[4] a reasonable factfinder could not interpret this act as evidence of organization or supervision. Buyers and sellers often need to accommodate one another when meeting and arranging for delivery. Such conduct is simply incidental to the buyer-seller relationship. *See Ward,* 37 F.3d at 249 (explaining that directions to buyers "were nothing more than instructions concerning where to meet for the drug purchase"). In sum, a reasonable jury could not conclude that Wright, alone or acting through Hubbard, organized or supervised the activities of Ohaegbu.

### 3. The Street Dealers.

█ Wright argues that the Government cannot rely on his relationship with customers to sustain the CCE conviction. The Gov-

---

**4.** Our conclusion that Wright organized Hubbard's activities allows us to treat her actions on behalf of the Wright–Hubbard enterprise as attributable to Wright for § 848 purposes. *See* *Church,* 955 F.2d at 697; *United States v. Rosenthal,* 793 F.2d 1214, 1226 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987).

ernment replies that evidence of Wright and Hubbard's fronting drugs to the street dealers satisfies the management requirement of § 848 and brings the number of persons organized above the five required by the statute.[5]   Although evidence of fronting is certainly relevant to the question of organization or supervision under § 848, *see United States v. Graziano,* 710 F.2d 691, 699 n. 13 (11th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *United States v. Johnson,* 575 F.2d 1347, 1358 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979),[6] this Court has never sustained a CCE conviction based solely on fronting. We now join the circuits which have held that evidence of fronting, *without more,* is insufficient to satisfy the management requirement of § 848. *See Ward,* 37 F.3d at 248 (6th Cir.) (quoting *United States v. Possick,* 849 F.2d 332, 336 (8th Cir.1988)); *Delgado,* 4 F.3d at 787 (9th Cir.); *Possick,* 849 F.2d at 336 (8th Cir.). *Cf. Butler,* 885 F.2d at 201 (4th Cir.) (citing *Possick's* holding with approval); *United States v. Moya–Gomez,* 860 F.2d 706, 749 (7th Cir.1988) (noting that courts have found that fronting, alone, is insufficient and explaining why the evidence shows more than mere fronting), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

The Government's reliance on *United States v. Aguilar,* 843 F.2d 155 (3d Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988), *United States v. Cruz,* 785 F.2d 399 (2d Cir.1986), and *United States v. Adamo,* 742 F.2d 927 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985), is misplaced. In these cases, the defendants' arrangement with their dealers went beyond simple fronting

and constituted a consignment or franchise type of operation, with the defendants retaining ultimate control and authority over the drugs. *Aguilar,* 843 F.2d at 157 n. 5; *Cruz,* 785 F.2d at 407; *Adamo,* 742 F.2d at 932. In *Aguilar,* for example, the evidence showed that when a dealer was unable to repay on time, the defendant would reclaim the drugs. *Aguilar,* 843 F.2d at 157. Wright and Hubbard never operated at such a level of sophistication.

Just as importantly, in *Aguilar, Cruz,* and *Adamo,* other substantial evidence helped satisfy § 848's management requirement. *See Aguilar,* 843 F.2d at 157–58; *Cruz,* 785 F.2d at 407; *Adamo,* 742 F.2d at 933. As the Sixth Circuit noted in distinguishing *Adamo* from a case where fronting was the sole evidence, "the government proved many other facts about the organization's activities in *Adamo.*" *Ward,* 37 F.3d at 250. Finally, to the extent that these cases can be interpreted to sustain a conviction based on fronting alone, we must disagree. Such an expansive reading of § 848 does not comport with the plain meaning of the terms "organize" or "supervise," *see* Webster's New World Dictionary 1590, 2296 (3d ed. 1976), goes beyond the scope intended by Congress, and violates the rule of lenity. Thus, the evidence of fronting relied on by the Government does not satisfy § 848's management requirement.[7]

In sum, the Government did not produce enough evidence for a reasonable jury to conclude that Wright organized or supervised the street dealers. The record, viewed in the light most favorable to the Government, only supports a conclusion that Wright organized or supervised Hubbard, four short

---

5.   Viewed in a light most favorable to the Government, Wright and Hubbard fronted cocaine to Bain, Chelewski, John Dixon, Tommie Dixon, and Witek.

6.   In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

7.   At oral argument the Government claimed that other evidence supports the jury's conclusion that Wright organized or supervised the street

dealers. The Government provided no record support for this claim, and our own review of the record did not uncover sufficient evidence for a reasonable jury to conclude that Wright organized or supervised at least four street dealers within the meaning of § 848. More fundamentally, although this Court has some discretion to consider arguments first raised at oral argument, "it does not try ever-changing theories parties fashion during the appellate process." *Wakefield v. Church of Scientology of California,* 938 F.2d 1226, 1229 n. 1 (11th Cir.1991).

of the minimum number required by § 848. *See* 21 U.S.C.A. § 848(c)(2)(a).

### III. CONCLUSION

We hold that the record does not contain sufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that Wright was guilty of engaging in a continuing criminal enterprise. Consequently, we vacate Wright's CCE conviction.[8] We affirm the other convictions and sentences involved in this appeal.

AFFIRMED in part, VACATED in part.

---

8. As we affirm Wright's other convictions, the only collateral consequence of vacating his CCE conviction is eliminating the $250 special assessment imposed for that count. Nevertheless, the presence of a special assessment required us to review Wright's CCE conviction. *See Ray v. United States*, 481 U.S. 736, 737, 107 S.Ct. 2093, 2094, 95 L.Ed.2d 693 (1987) (holding that the concurrent sentence doctrine does not preclude review of a sentence including a special assessment); *United States v. Young*, 975 F.2d 1537, 1540 (11th Cir.1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 1431, 122 L.Ed.2d 798 (1993).