

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2004

# Govt of VI v. Anderson

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2620

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Govt of VI v. Anderson" (2004). *2004 Decisions.* Paper 714.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/714

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 01-2620

GOVERNMENT OF THE VIRGIN ISLANDS

v.

AVERY ANDERSON,

Appellant

_____

On Appeal from the United States District Court
of the Virgin Islands, Division of St. Thomas and St. John, Appellate Division
(No. 96-cr-00246-1)
Trial Judge: Honorable Thomas K. Moore
District Judge: Honorable Raymond L. Finch
Territorial Judge: Honorable Patricia D. Steele

_____

Submitted Pursuant to LAR 34.1

May 5, 2004

BEFORE: BARRY, AMBRO and SMITH, *Circuit Judges*

(Filed: May 12, 2004)

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge.*

Avery Anderson appeals the decision of the District Court of the Virgin Islands Appellate Division affirming his conviction for first degree murder and assault in the first degree and the denial of his motion for a new trial.[1] Because we agree with the Appellate Division's treatment of the issues raised by Anderson on appeal, we too will affirm.[2]

**I.**

Because we write for the parties, we recite only those facts necessary to reach our decision. On January 9, 1994, police found Malik Meyers and George Van Holten shot on the basketball court at the Paul M. Pearson Gardens Housing Community. Meyers died after being shot in the back. Van Holten was severely wounded. Police made the discovery in the course of pursuing a suspect in another shooting which had occurred nearby in Mandela Circle. Police arrested Anderson's co-defendant, Alexander Viust, a short time later, after he was identified by witnesses to the Mandela Circle shooting. Viust underwent a gunshot residue test, the results of which were consistent with his

---

[1] The Appellate Division had jurisdiction pursuant to 4 V.I.C. § 33 and 48 U.S.C. § 1613a. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 48 U.S.C. § 1613a(d).

[2] It appears from the record that Iver A. Stridiron, the Attorney General for the Virgin Islands and the lead attorney on the Government's brief, also represented Anderson in this matter at the trial court level. Neither Anderson nor the Government has discussed this apparent conflict in the briefs, so we assume that the issue has either previously been, or is now, waived. In any event, no conflict issue has been raised by either party and so we will not address the matter further.

having recently fired a gun.[3]

At trial, police testified that several individuals whom they had interviewed indicated that they saw Rafael Rivera and Carl Johnson either commit the shootings or run away from the area of the bodies soon after the shootings. Although the police referred to these interviewees as "reliable sources" or "independent reliable sources," they testified that the informers had refused to provide the police with any identifying information. The police summarized the information from those interviews in their reports, and those reports were provided to Anderson through discovery.

Anderson and Viust moved to dismiss, asserting that the identity of the sources was material, exculpatory evidence which was being wrongfully withheld from the defense in violation of *Brady v. Maryland*, 373 U.S. 86 (1963). The Territorial Court ordered the Government to disclose the name of one of the sources. Apparently due to some confusion between the police and the prosecutor, the prosecutor initially indicated to the Territorial Court that Sergeant Reynold Fraser refused to reveal the name of the sources. In fact, as Sergeant Fraser clarified, the identity of the sources in this case was not known and he was therefore unable—rather than unwilling—to provide the information requested.

Nichelle Benjamin, Johnson's girlfriend, provided a sworn statement to police

---

[3] This Court affirmed Viust's appeal of his conviction in a not precedential opinion. *See Gov't of the Virgin Islands v. Viust*, No. 01-2557, 2002 WL 1174665 (3d Cir. June 4, 2002).

indicating that Johnson had admitted to the shootings, but Benjamin could not be located at the time of trial to testify. Despite her absence, Anderson and Viust introduced her written statement as part of their defense.

Viust's first cousin, Daniel Guzman, testified: "I saw my cousin and Alexander—I mean Avery, running . . . with weapons in their hand. . . . After I saw that, I just hear a lot of shots firing, and people dropping." He testified specifically that he was standing in the street and could therefore clearly see that the shots came from Anderson. In the course of his testimony, Guzman stated that when he witnessed the shootings he had been with his friend "Danny." Guzman's pretrial statement, which was given to the defense by January 9, 1996 at the latest and at least six months prior to trial, indicated that he was with a friend named "Danny" on the night of the shooting. However, that friend's full name was not discovered until Guzman testified and Viust's mother realized that "Danny" was Andrew "Danny" Williams.

## II.

Anderson argues that the Territorial Court erred in denying his motion for dismissal because: (1) the refusal by police to reveal the names of the sources constituted police misconduct and (2) the Government failed to provide the defense with "information upon which a search for Ms. Benjamin could have been conducted." Anderson argues that both were in violation of *Brady*. These arguments must fail, however, because in order to be valid, a *Brady* complaint must show that (1) the prosecution suppressed or withheld evidence,

4

(2) which was favorable, and (3) material to the defense. *United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991).[4]  A necessary prerequisite to suppression or withholding is that the Government must possess the information in the first place.  Anderson has failed to show that the Government possessed the information about the identity of the sources or Benjamin's whereabouts at the time of trial, and he therefore cannot show that the Government suppressed or withheld that information from the defense.

Anderson further argues that he had a "constitutional right to the government's assistance in compelling the attendance of favorable witnesses at trial."  He does not provide (nor are we aware of) any authority to support such an assertion in a situation such as this where the identity or whereabouts of those witnesses were unknown to the Government. Accordingly, that argument too must fail.

### III.

Anderson next argues that the evidence was insufficient to sustain his convictions. In reviewing such a claim, this Court will sustain a conviction if there is substantial evidence, viewed in the light most favorable to the government, to support that conviction. *United States v. Aguilar*, 843 F.2d 155, 157 (3d Cir. 1988).  In undertaking this review, this Court

---

[4] The Government argues that we should not consider Anderson's *Brady* arguments because they were raised for the first time on appeal.  Because a *Brady* argument, by its nature, is frequently only raised on appeal (*i.e.*, if the appellant knew the Government was withholding or suppressing evidence he or she would have requested and obtained the evidence prior to or during the trial), we reject this argument. *See, e.g., United States v. Agurs*, 427 U.S. 97, 103 (1976) (*Brady* applies in situations which involve "the discovery, *after trial* of information which had been known to the prosecution but unknown to the defense.") (emphasis added).

does not re-weigh the evidence or re-assess the credibility of the witnesses, but rather must ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Anderson argues that the only evidence linking him with the crime was the "uncorroborated testimony of Daniel Guzman, a convicted felon."  As the Appellate Division noted in its affirmance, however, even "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *Jacobs v. Redman*, 616 F.2d 1251, 1255 (3d Cir. 1980) (quoting *United States v. DeLarosa*, 450 F.2d 1057, 1060 (3d Cir. 1971)); *see also United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir. 1980) (testimony of co-conspirator must be accepted as true for the purpose of determining the sufficiency of the evidence). Further, Guzman's testimony was not uncorroborated, because it found support from the physical evidence collected at the scene.

Anderson argues that the statements from Benjamin and the unidentified sources should outweigh the in-court testimony of Guzman and the detectives.  It is clear, however, that all of this information was available to the jury at the time it rendered its verdict.  We conclude, therefore, that there was sufficient evidence to sustain Anderson's convictions because a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## IV.

Anderson's third and final argument is that the District Court erred in denying his

6

motion for a new trial based on newly discovered evidence. The evidence upon which that motion was based consists of an affidavit from Andrew "Danny" Williams, the friend with whom Daniel Guzman testified he had been on the night of the shootings. Guzman referred to Williams only as "Danny" in his pretrial statement and in his trial testimony. According to Anderson and Viust, it was only during Guzman's testimony that Viust's mother realized that this "Danny" was in fact Williams. It then took several additional weeks to locate Williams once his identity was discovered. Williams's affidavit indicates that he had "known and been [] good friend[s]" with Viust for many years. It also stated that, although Williams and Guzman had been together on the night of the shootings, neither had "witnessed any shooting" but that they had "come upon two males lying on a sidewalk in Paul M. Pearson Garden who had been wounded and were covered with blood."

Ordinarily, we review the denial of a motion for a new trial on the basis of newly discovered evidence for abuse of discretion. However, where, as here, the motion for a new trial is based on an alleged *Brady* violation, we review the District Court's conclusions of law *de novo* and its findings of fact for clear error. *United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir. 1991). In order for the District Court to order a new trial on the ground of newly discovered evidence, five requirements generally must be met:

> (a) the evidence must be in fact, newly discovered, *i.e.*, discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on[] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

7

*United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976).  Much like the outcome in *Iannelli*, Anderson has failed to satisfy at least the first two of these requirements.[5] *Id.* at 1293.  As the Appellate Division correctly observed, the substance of Williams' affidavit was in fact not newly discovered because Anderson or Viust could have obtained the same information from Williams prior to trial. *Id.*; *see also United States v. DeRewal*, 10 F.3d 100, 104 (3d Cir. 1993) ("newly discovered evidence must be evidence that trial counsel *could not have discovered* with due diligence before trial.") (emphasis in original).  Further, other than his averment that "Anderson was diligent in his attempts to ferret the names, addresses and whereabouts of witnesses for his cause," we agree with the trial court and the Appellate Division's conclusion that Anderson has not proffered any facts or argument from which we can conclude that he was diligent in his attempt to ascertain Williams's identity or to obtain a statement from him.  Rather, the facts suggest the opposite: Anderson was aware since at least the time of Guzman's pretrial statement that Guzman was with "Danny" on the night of the shooting.

Although Anderson argues that because Guzman was in custody the Government should have been "duty-bound to disclose the true name and address of 'Danny' as *Brady* material," we note that whether Guzman was in custody has no bearing on whether the Government was aware that Williams was "Danny."  As discussed previously, a necessary

---

[5] Our analysis ends with the conclusion that these first two requirements have not been met.  We therefore have not assessed whether Williams's affidavit would satisfy the fifth requirement, *i.e.*, that in a new trial it would probably result in an acquittal.

prerequisite to suppression or withholding under *Brady* is that the Government must possess the information in the first place. Anderson has not shown that the Government had knowledge before he did that Williams was "Danny."

**V.**

Because we conclude that the Appellate Division was correct in its determinations that the Government did not withhold information from Anderson in violation of *Brady* and that there was sufficient evidence to convict Anderson of the crimes charged, we will affirm the decision of the Appellate Division.