**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roberto GONZALES and Stewart McGlinchey,**
**Defendants–Appellants.**

**No. 88–2256.**

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1989.

Thomas S. Berg, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Gonzales.

Michael D. Miller, court-appointed, Galveston, Tex., for McGlinchey.

Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, HIGGINBOTHAM and DUHE, Circuit Judges.

DUHE, Circuit Judge:

Defendants Roberto Gonzales and Stewart McGlinchey were charged with others in a multi-count indictment involving various cocaine transactions. McGlinchey never sold directly to any drug enforcement agents but dealt cocaine to a number of middlemen, including co-defendant Gonzales who sold cocaine to an undercover agent. McGlinchey was convicted of continuing criminal enterprise (CCE), conspiracy, communications offenses, and distribution. R. 556. Gonzales was convicted of conspiracy, communications offenses, and distribution. R. 558.

Defendants Gonzales and McGlinchey appeal. For the following reasons, we affirm on all points except the conspiracy conviction and sentence of McGlinchey.

## 1. *CCE*

Defendant McGlinchey contests the sufficiency of the evidence to sustain his conviction of CCE. The CCE statute requires proof that a defendant organized, supervised, or managed five or more persons in a continuing series of drug violations from which the defendant obtained substantial income. 21 U.S.C.A. § 848(b)(2)(A) (1981) [§ 848(b) was redesignated as § 848(d) by 1986 amendment (Supp.1988)]. McGlinchey argues that he had a simple buyer-seller relationship with his customers, which does not establish "supervision". McGlinchey also distinguishes his case from cases upholding CCE convictions involving a "kingpin" with whom buyers cannot negotiate prices or other terms of their sales and who import massive amounts of controlled substances.

The standard of review for claims of insufficiency of the evidence is whether, after viewing the evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the jury verdict, any rational jury could have found the essential elements beyond a reasonable doubt. Neither the jury nor this Court is required to examine each circumstance in isolation. *See U.S. v. Magee,* 821 F.2d 234, 239 (5th Cir.1987). All reasonable inferences and credibility choices which support the jury's verdict must be accepted. *U.S. v. Clark,* 741 F.2d 699, 703 (5th Cir.1984).

The evidence showed many sales by McGlinchey, mostly wholesale (except to Smith), including the following:

11/83 McGlinchey/Tigett and girlfriend Park/Agent Cavazos (about 4 sales)

10/84 McGlinchey/Cook/Russel and girlfriend Falterman (an informant)/Agent Barry (2 sales)

McGlinchey/"Butch"/Jim and Dinah Mueller

3/85—11/85 McGlinchey/Cook/Jim Mueller (numerous transactions)

1985—1/87 McGlinchey/Mueller (weekly transactions from 1–86 till Mueller's death in 1–87) (Mueller had 7–10 customers, including Pouncey and Cindy, McGlinchey's daughter)

8/85—1986 McGlinchey/Lyles (Cindy's boyfriend) (about 30 transactions) /Stephens/Agent Console and Agent Weed

11/85—5/86 McGlinchey/Pouncey/Agent Rogers (9 deals)

5/86 McGlinchey/Roberto Gonzales and "wife" Ochoa/Agent Collins (2 deals)

4/86—5/86 McGlinchey and brother Joe/Ken Smith

There was ample evidence to support the jury's conclusion that McGlinchey organized five or more people in a criminal enterprise. McGlinchey approached Tigett to deal cocaine while Tigett was a patron in McGlinchey's bar. McGlinchey used Cindy to recruit Lyles. His partner at his business (A–1 Air Conditioning), an ex-police

officer with a previous conviction of heroin possession, provided intelligence to McGlinchey. McGlinchey had connections at the downtown police department. Cook, Lyles, and Pouncey all tried to protect McGlinchey from detection, and McGlinchey protected his subordinates from detection and arrest. McGlinchey used Cindy and his brother Joe as couriers.

McGlinchey financed some of his buyers' purchases by either fronting the cocaine or accepting checks and holding them until the proceeds of the sales covered them. He frequently used women driving in separate cars for deliveries as a cover because they look less suspicious. Because some of his subordinates also used this practice, the jury might have reasonably inferred that McGlinchey encouraged this practice. Similarly, several of the defendants used the same code words to describe cocaine.

Control was also manifest by McGlinchey's directing Gonzales to meet him despite Gonzales's fear of detection. He controlled the amount Tigett and Pouncey (among others) could resell. He paid Cindy to go to Houston to obtain cutting agents. He financed Pouncey's bail. He provided his subordinates with vehicles and dwellings.

McGlinchey had a residence in Galveston at 2127 Saladia and several lots in Hitchcock about twenty minutes from the Saladia house; McGlinchey also had an apartment at the Landings where he often harbored his yacht, the ISLAND PRINCESS. Lyles lived in a Landings apartment with a telephone wire stretched to McGlinchey's yacht, and Lyles stored cocaine for McGlinchey at his apartment. At various times McGlinchey allowed Joe and Pouncey to live at his Hitchcock residence; the Muellers, Cindy (while dating Lyles), Pouncey, and Joe all lived at McGlinchey's Saladia Street house at one time or another. Mueller dealt to his customers from the Saladia Street house. McGlinchey allowed Lyles to enter the Saladia Street house to pick up cocaine or drop off proceeds even while McGlinchey was out of town. McGlinchey also used A–1 Air Conditioning business as a site for deals and at least once ran drug money through its account.

The terms "organized," "supervised," and "managed" are not words of art and should be interpreted according to their everyday meanings; an elaborate structure need not be shown. See U.S. v. Oberski, 734 F.2d 1030, 1032 (5th Cir.1984). The evidence certainly permits a reasonable inference that McGlinchey supervised at least five individuals among Cindy, Joe, Tigett, Pouncey, Lyles, Cook, Gonzales, and Mueller (not counting Smith who was a retail customer or Stephens, Russel, and Falterman who possibly never met McGlinchey).

A CCE conviction also requires proof that defendant obtained "substantial income or resources" from his conduct. 21 U.S.C. § 848(b)(2)(B). The Supreme Court has said the CCE statute "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." Garrett v. U.S., 471 U.S. 773, 781, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764 (1985). Nevertheless, the requirement that a defendant obtain substantial income from drug trafficking is satisfied by showing that many thousands of dollars changed hands, and that some was received by the defendant. See U.S. v. Bolts, 558 F.2d 316, 321 (5th Cir.), cert. denied, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed. 2d 290 (1977).

In this case about $44,000 worth of McGlinchey's drugs was sold to the government alone. One of McGlinchey's customers (Cook) sold $700 worth of cocaine to Mueller every week; Mueller paid Cook for some of the cocaine with checks endorsed "S. McGlinchey" or stamped "A–1 Air Conditioning." When Mueller began buying directly from McGlinchey, he bought twice as much cocaine weekly as he had from Cook. Another customer (Lyles) paid McGlinchey about $15,000 for cocaine. The May 1986 search of McGlinchey's West Bayou Lane house disclosed about $3,000 in cash and about $28,000 in jewelry. While there was no evidence of massive importation or individual sales of great quantities, there was sufficient evidence from which the jury could reasonably infer

that McGlinchey obtained substantial income from his drug trafficking. This Court will not overturn the CCE conviction.

## 2. *McGlinchey convictions in Counts 4, 9, 10, 11, and 12*

█ *Count 4.* McGlinchey argues that there was no proof of the origin of the cocaine involved in the Cook/Russel/Agent Barry transaction on October 9, 1984 at 6:39 p.m. Cook was simply observed driving to McGlinchey's Saladia Street residence and arriving at 6:58 p.m., and McGlinchey's car was there. Cook later acknowledged that he provided Russel with the cocaine and that he had obtained it from a source to whom he had paid the proceeds of the sale. Cook told Agent Barry that his source was the largest cocaine dealer on the Texas coast and had been in business for twenty years. Ample evidence showed that the Saladia Street house was frequently the site for exchanges of cocaine and sale proceeds. The jury is entitled to view the circumstance of Cook driving to McGlinchey's house in conjunction with the totality of the circumstances and infer therefrom that McGlinchey was the source.

█ *Counts 9, 10, and 11.* McGlinchey argues that there is no evidence that the October 8, 11, and 29, 1985, cocaine deliveries made by Lyles and Stephens to Agent Console originated with McGlinchey. McGlinchey was in Kansas City October 6, 1985, and there was evidence that Lyles got no cocaine from McGlinchey when he got back. Further, McGlinchey argues, on September 6, Lyles had only one ounce when Console ordered two ounces; the October deliveries must have come from another source since McGlinchey was out of town. Lyles testified that the cocaine from the October 29 delivery came from another source and that he was unsure about the origin of the October 8 and October 11 contraband.

The jury is entitled to discredit this testimony exonerating McGlinchey. On two earlier dates Lyles visited or called McGlinchey at his apartment or at the Saladia address before and after cocaine sales. Similar circumstances were shown on the dates of the three sales in question:

*October 8:* At 2:35 p.m., a one-minute phone call was registered between McGlinchey's Saladia phone and Lyles's phone. A Lyles/Stephens/Agent Console sale occurred at a nearby 7–11 Store around 3:30 p.m. At 6:34 p.m. another call was registered from the Saladia phone to Lyles's phone.

*October 11:* Lyles/Stephens/Console deal transpired from 5:15 to 5:25 p.m.; agents followed Lyles to the Saladia residence where he parked behind McGlinchey's van. At 5:35 p.m. Lyles drove away from the house, and at 6:45 p.m. a call was registered from Saladia to Lyles.

*October 29:* Stephens phoned Console to arrange an afternoon sale. At 10:01 a.m. a call was registered from the Saladia phone to Lyles's apartment. At 2:45 p.m. Agent Console paid Stephens; at 2:47 p.m. Stephens drove to Lyles's apartment, stayed till 3:00 p.m., and returned with the cocaine at 3:12 p.m. At 4:56 p.m. a phone call was registered from McGlinchey's Saladia phone to Lyles's apartment.

In light of the communication between McGlinchey and Lyles on these three days, which was characteristic of the pattern of contact between them on other drug delivery days, it is a reasonable inference that the cocaine originated with McGlinchey.

█ *Count 12.* McGlinchey argues that the jury should not be permitted to infer from subsequent activities from December 1985 to May 1986 that the cocaine delivered by Pouncey to Agent Rogers on November 6, 1985 originated with McGlinchey. The November 6 sale occurred at 5:00 p.m., and at 5:36 p.m. Pouncey received a call from McGlinchey's Saladia telephone. The jury need not examine the circumstance of the November 6 transaction by itself. As early as August 30, Pouncey was observed checking Agent Console's license plate at the Landings during a Lyles/Stephens/Console delivery. The jury may reasonably infer from this previous evidence that Pouncey was performing countersurveillance for the conspiracy, together with

evidence that eight subsequent deliveries from Pouncey to Rogers were tied to McGlinchey, that the November 6 delivery originated with McGlinchey.

### 3. *Lesser included conspiracy*

■ McGlinchey was sentenced to twelve years for conspiracy to distribute and to possess with intent to distribute cocaine (21 U.S.C. § 846, Count 1) and sentenced to twelve years for CCE (21 U.S.C. § 848, Count 2) to run concurrently with the sentence on Count 1. Since conspiracy is a lesser included offense of CCE, it cannot support a separate conviction and sentence. *See U.S. v. Michel*, 588 F.2d 986, 1001 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). The proper remedy for convictions on both greater and lesser offenses is to modify the judgment, vacating the conviction and sentence on the lesser included offense. There is no need to remand for resentencing, because it is clear that the conspiracy conviction did not lead the trial court to impose a harsher sentence on the CCE than he would have without the conspiracy. *See Michel*, 588 F.2d at 1001.

McGlinchey's argument that the convictions of substantive offenses should also be vacated as lesser included crimes is contrary to *Garrett*, 471 U.S. at 778–86, 105 S.Ct. at 2411–15. These convictions stand.

### 4. *Probable Cause for the Wiretap*

■ Federal agents tapped McGlinchey's various phones pursuant to a wiretap order obtained on the affidavit of Agent McCormick. McGlinchey argues that the affidavit was based on conclusory allegations and stale, uncorroborated information from informants in contravention of 18 U.S.C. § 2518(3)(a), (b), and (d) and his Fourth Amendment rights.

An order authorizing a wiretap, like an ordinary search warrant, must be supported by a finding of probable cause. If the judge uses common sense and bases her finding on the entire picture presented to her, our review is limited. "When this is done [her] determination is conclusive in the absence of arbitrariness." *U.S. v.*

*Weinrich*, 586 F.2d 481, 487 (5th Cir.1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 (1979), and *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). The task of the issuing judge is to make a common sense decision whether the affidavit shows a fair probability that evidence will be obtained, according to all the circumstances, including the veracity and basis of knowledge of anyone supplying hearsay information. We owe great deference to Judge McDonald's determination of probable cause, but we must ensure she had a substantial basis for concluding that probable cause existed. *See Illinois v. Gates*, 462 U.S. 213, 236, 238–239, 103 S.Ct. 2317, 2331, 2332–33, 76 L.Ed.2d 527 (1983), and *U.S. v. Phillips*, 727 F.2d 392, 394–95 (5th Cir.1984).

Confidential Informant No. 1 (CI # 1) previously provided information resulting in at least four arrests of subjects committing burglaries in order to provide a ready source of property to obtain drugs. This lends credibility to the hearsay testimony that CI # 1 saw six kilos of cocaine at McGlinchey's residence in 1984. The basis of knowledge is also provided in the affidavit in that CI # 1 has knowledge of cocaine. *See* para. 16, McCormick affidavit, Government Exhibit # 1, Suppression hrg. 8–31–87.

In 1985 McCormick interviewed CI # 2 (Tigett) who was hoping to mitigate pending state drug charges against him. Para. 17. CI # 2 admitted buying about 5½ ounces of cocaine from McGlinchey on four separate occasions during the fall of 1983. The 1983 and 1984 information from CI # 1 and # 2 is not objectionable as "stale" in view of indicia of the longstanding, ongoing pattern of criminal activity. *See U.S. v. Hyde*, 574 F.2d 856, 865 (5th Cir.1978).

McGlinchey argues that because CI # 3 never met McGlinchey, his information is conclusory and not factual. However, the information is based on facts: CI # 3 had phone conversations with three cocaine sellers resulting in 1985–86 purchases of cocaine; corroborative surveillance shows that the cocaine probably originated with McGlinchey. Para. 18.

McGlinchey also objects to statements about observances at McGlinchey's residence, because the affidavit "refutes" the credibility of such observances by admitting that this location "is extremely difficult to adequately observe from a surveillance position." Para. 19. The affidavit adequately explains this statement by qualifying that surveillance was conducted intermittently on an almost daily basis.

Pen registers authorized and installed on McGlinchey's various phones for 30–day intervals from July 1985 to early 1986 registered frequent calls to known and suspected drug dealers including Lyles, Stephens, Velma Sanchez a/k/a Velma Ochoa (with whom Gonzales lived), Pouncey, Cook, Stuart (who offered to sell cocaine to CI # 3), and to the SeaBreeze Restaurant, managed by a suspected drug distributor. Additionally, the agent purchasing cocaine from Pouncey left a message for Pouncey to call him at the number of a pay telephone; a call to this pay telephone was registered from McGlinchey's telephone shortly after the agent left the message. Paras. 22–33.

McGlinchey accurately states that pen register information does not demonstrate that he made the calls or how many people could use the phone. The affidavit nevertheless provided probable cause to believe that the phone was being used by McGlinchey "and others known and unknown" to distribute drugs. (Para. 20). Considering all the circumstances, the affidavit properly indicates that drug distribution was ongoing (sufficient to show that a crime was about to be committed) and that evidence of the crime would probably be obtained from the wiretap. *See* 18 U.S.C.A. § 2518(3)(a), (b), and (d) (1970 and Supp. 1988). The judge authorizing the wiretap gave "full consideration" to these matters set forth in the application. Government Exhibit 2, Suppression hrg. 8–31–87. She had a substantial basis for concluding that probable cause existed.

### 5. *Predicate Act*

■ To sustain a CCE conviction, the evidence must show a continuing series of drug violations to form the predicate for the continuing enterprise. McGlinchey argues that the jury was improperly charged that conspiracy, a lesser included offense to the CCE charge, could be used as a predicate act for CCE.

This Court need not decide whether proof of the conspiracy could be used to support McGlinchey's CCE conviction. McGlinchey's convictions on nineteen counts of distribution and five communications offenses show a continuing series of violations sufficient to form the predicate offenses. *See Michel,* 588 F.2d at 1001.

### 6. *Gonzales's involvement in single conspiracy*

■ Defendant Gonzales argues that the indictment's allegation of a single conspiracy materially differed from four (or more) distinct conspiracies proved at trial. Gonzales alleges prejudice from the mass evidence of the other conspiracies and insufficient evidence to convict him of conspiracy.

Whether evidence shows one or multiple conspiracies is properly a question for the jury. *U.S. v. Erwin,* 793 F.2d 656, 662 (5th Cir.), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). The jury was instructed to analyze the evidence with respect to each defendant individually and to disregard totally any evidence admitted solely against another defendant. R. 1181 and 2065–66. The jury was also cautioned that it must acquit a defendant who is a member of a conspiracy different from the one charged in the indictment. R. 2048–49.

■ The elements of a drug conspiracy are 1) the existence of a conspiracy to distribute or to possess with intent to distribute cocaine, 2) knowledge of the conspiracy, and 3) voluntary participation in the conspiracy. *See U.S. v. Gardea Carrasco,* 830 F.2d 41, 44 (5th Cir.1987); *see also* 21 U.S.C.A. § 846 (1981). Conspiracy was sufficiently proven as discussed above. Gonzales's knowledge of other members of McGlinchey's plan to distribute cocaine was evidenced by his identifying himself as "one" of McGlinchey's "best customers." R. 1418. His purchase of cocaine from McGlinchey and resale evince his voluntary

participation in the conspiracy. We will not overturn a conspiracy conviction because the defendant played a minor role. *Gardea Carrasco,* 830 F.2d at 44. In view of the cautionary jury instructions and the evidence from which the jury could reasonably find beyond a reasonable doubt that Gonzales participated in the single conspiracy, we affirm Gonzales's conspiracy conviction.

### 7. *Denial of Gonzales's motion to sever*

■ Again Gonzales argues unrelated conspiracies and prejudicial joinder. The trial court denied Gonzales's Rule 14 motion to sever, a ruling which is reversable only for abuse of discretion. *U.S. v. Harrelson,* 754 F.2d 1153, 1177 (5th Cir.1985). The general rule is that defendants indicted together should be tried together. *Erwin,* 793 F.2d at 665. Gonzales has not met his burden of showing "that he suffered specific and compelling prejudice against which the trial court was unable to afford protection, and that this prejudice resulted in an unfair trial." *Harrelson,* 754 F.2d at 1177.

In consideration of the foregoing, the judgment of conviction and sentence of Stewart McGlinchey for conspiracy (Count 1) are VACATED; the judgments of conviction and sentences on the remaining charges against Stewart McGlinchey and all charges against Roberto Gonzales are AFFIRMED.

VACATED in part and AFFIRMED in part.