IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 00-41224

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KERRY L. BASS,
also known as Kerry Lerron Bass

Defendant-Appellant.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————

October 16, 2002

Before WIENER and STEWART, Circuit Judges, and RESTANI[*], District

Judge.

Wiener, Circuit Judge:

Defendant-Appellant Kerry L. Bass appears before this court a

second time, appealing the district court's denial of his 28 U.S.C.

§ 2255 motion to vacate, set aside, or correct his sentence. Bass

maintains that his counsel provided ineffective assistance at trial

and on direct appeal by failing to challenge (1) the sufficiency of

the evidence supporting his continuing criminal enterprise ("CCE")

conviction and (2) on double-jeopardy grounds, his conspiracy and

CCE convictions. Concluding that Bass's counsel was ineffective in

———————————————

[*] Judge of the U.S. Court of International Trade, sitting by
designation.

failing to challenge the sufficiency of the evidence for his CCE conviction, we vacate Bass's conviction on that count. Doing so makes moot his double jeopardy claim.

## I.
## FACTS AND PROCEEDINGS

Bass is currently incarcerated in a federal penitentiary in eastern Texas. His status as federal prisoner no. 66118-079 is the culmination of a legal process that began on April 14, 1994, when he was indicted on multiple counts of violating federal narcotics statutes and failing to file income tax returns.[1] Two other individuals, Troy Donovan Bounds and Paul Anthony Alix, were named in the indictment.

A jury trial commenced in October 1994. The government presented evidence showing that Bass was implicated in a web of drug commerce in several East Texas communities. Bass used his legitimate chemical business, KLB Environmental Services ("KLB"), in Houston, Texas, as a cover for his participation in that drug

---

[1] The specific charges were as follows: conspiring from December 1988 to January 1993 to distribute more than 50 grams of cocaine base (count 1); conspiring from December 1988 to January 1933 to possess with the intent to distribute more than 5 kilograms of cocaine (count 2); engaging from December 1988 to January 1933 in a CCE, with counts 1-2 and counts 4-11 constituting the predicate offenses (count 3); on various occasions between October and December 1990, aiding and abetting possession with intent to distribute more than 5 grams of cocaine base (count 4-9); in January 1991, aiding and abetting possession with the intent to distribute more than 50 grams of cocaine base (count 10); from July 1989 through January 1990, aiding and abetting engaging in a monetary transaction in criminally derived property affecting interstate commerce (count 11); and failing to file income tax returns for the years 1988 through 1991 (counts 12-15).

commerce. He employed Bounds (one of his indicted co-conspirators) at KLB, and he directed Bounds to deliver cocaine to numerous persons in Houston.

During his involvement in the drug ring, Bass sold cocaine on a regular basis——either personally or through Bounds——to Steven Alix, Paul Alix, Bryan Kyles, Shawn Wade, and David Fischer. These individuals converted the cocaine they purchased from Bass into cocaine base (known in common parlance as "crack"), which they resold in Victoria, Texas. They either sold the cocaine base directly or supplied it to others, such as David Barefield, who then resold it. Kyles testified that, from the many discussions that he and Bass had concerning "everything that [they] were doing," including "cooking cocaine into 'crack,'" Bass knew of the conversion and resale of the cocaine base.

Bass's knowledge of his purchasers' activities was confirmed by his renting of vehicles for Fisher so that Fisher could travel to Victoria to sell the cocaine base. The car rental fees were paid with the proceeds from Fisher's sales. In addition, Bass advised Fisher not to drive flashy cars lest he be noticed by the police. When a Cadillac rented by Fisher was seized by police late in December of 1990, Bass had Kyles drive both Bass and Bounds to Victoria to retrieve the vehicle.

Bass also used KLB in several other respects related to drug commerce. First, Bass had Bounds sell cocaine for Bass in the course of Bounds's employment at KLB, and Bounds frequently drove

3

KLB-marked vehicles and wore a KLB uniform when making cocaine deliveries for Bass.  Second, Bass told Fisher, Wade, Steven Alix, and Kyles that they could use KLB as an employment reference, even though none of them worked there.  Third, Bass placed Paul Alix on the payroll at KLB, even though he did not work there; and when the police arrested Paul Alix in Victoria, Texas, on December 27, 1991, they found a KLB business card in his wallet.

The jury convicted Bass on all counts for which he was charged in the indictment.  Bass was sentenced to (1) nine terms of 360 months' imprisonment, to be followed by five years of supervised release for each of the conspiracy and distribution counts; (2) one term of 360 months' imprisonment, to be followed by five years of supervised release for the CCE count; (3) one term of 120 months' imprisonment, to be followed by three years of supervised release for the criminally derived property count, and (4) one term of twelve months' imprisonment, to be followed by one year's supervised release for the income tax evasion counts.  All terms are being served concurrently.  Bass was also ordered to pay separate $50 assessments for each of the conspiracy, distribution, and CCE counts, and separate $25 assessments for each of the tax evasion counts, for a total of $650.  We affirmed Bass's conviction and sentence on direct appeal.[2]

Bass subsequently filed a pro se 28 U.S.C. § 2255 motion to

---

[2] United States v. Alix, 86 F.3d 429 (5th Cir. 1996).

4

vacate, set aside, or correct sentence. He alleged, <u>inter alia</u>, that his counsel at trial and on appeal provided ineffective assistance by failing to challenge (1) the sufficiency of the evidence supporting his conviction for conspiring to distribute cocaine base, (2) the quantity of cocaine base attributed to him for sentencing purposes, (3) the sufficiency of the evidence supporting his CCE conviction, and (4) on double-jeopardy grounds, his conspiracy and CCE convictions. The government moved to dismiss Bass's § 2255 motion on the merits. Without holding an evidentiary hearing, the district court dismissed the case with prejudice, and denied Bass a certificate of appealability ("COA").

Bass then sought a COA from this court, which we granted for the sole purpose of a limited remand to the district court for it to enter written reasons for the dismissal of Bass's claim of ineffective assistance of appellate counsel based on the failure to challenge the sufficiency of the evidence supporting his CCE conviction. We deferred ruling on Bass's request for a COA for his claim of ineffective assistance based on counsel's failure to mount a double-jeopardy challenge to Bass's conspiracy and CCE convictions, and we denied the COA for the other issues.

On remand, the district court issued an order explaining that Bass's appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence supporting Bass's CCE conviction, contending that there was in fact sufficient evidence. The district court noted that the evidence adduced at trial showed

5

that Bass met the legal requirements for violating the CCE statute, i.e., he (1) engaged in a continuing series of drug violations; (2) organized, managed or supervised six individuals (Troy Bounds, Paul Alix, David Fisher, Brian Kyles, Shawn Wade, and Steven Alix); and (3) derived a substantial profit from the drug trafficking.

After the district court so ruled, we granted a COA and ordered briefing with respect to the two issues on which Bass claims ineffective assistance: his counsel's failure (1) to challenge, on direct appeal, the sufficiency of the evidence supporting Bass's CCE conviction, and (2) to challenge, on double-jeopardy grounds, both at trial and on direct appeal, Bass's conspiracy and CCE convictions.

## II.
## ANALYSIS

We first address the issue of the sufficiency of the evidence supporting Bass's CCE conviction. This requires us to answer two questions: (1) whether the evidence is sufficient to support Bass's CCE conviction, and (2) if so, whether the failure of Bass's counsel to raise this issue on direct appeal was prejudicial. As we shall explain, because we answer these questions in the affirmative and vacate Bass's CCE conviction, we need not address Bass's double jeopardy claim.

A.   Standard of Review; Test for Ineffective Assistance of Counsel

A district court's conclusions concerning a § 2255 petitioner's claims of ineffective assistance of counsel involve

mixed questions of fact and law, which we review <u>de novo</u>.[3]

In applying the same standards as the district court, we recognize that a claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal.[4]  To obtain relief on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's conduct was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) this deficient performance prejudiced his defense.[5]  It is insufficient for a defendant merely to prove that counsel's conduct was deficient; a defendant must have also been prejudiced by this ineffective legal assistance.  To prove prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[6]  Such a claim fails unless the defendant establishes <u>both</u> deficient performance and prejudice.[7]

B.  <u>Sufficiency of the Evidence for the CCE Conviction</u>

Bass alleges that his attorney performed deficiently and

---

[3] <u>United States v. Faubion</u>, 19 F.3d 226, 228 (5th Cir. 1994).

[4] <u>United States v. Pierce</u>, 959 F.2d 1297, 1301 (5th Cir. 1992).

[5] <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

[6] <u>Id.</u> at 694.

[7] <u>Id.</u> at 697.

prejudiced his defense in failing to challenge the sufficiency of the evidence supporting his CCE conviction. We "review sufficiency-of-the-evidence challenges to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] In making this assessment, "this Court views all evidence in the light most favorable to the government with all reasonable inferences and credibility choices to be made in support of the jury's verdict."[9]

Keeping in mind Bass's substantial evidentiary burden, we first address the CCE statute's requirement that the government prove beyond a reasonable doubt that (1) the defendant organized, supervised, or managed at least five persons (2) in a continuing series of drug violations (3) from which the defendant received substantial income.[10] Bass argued to the district court that there was insufficient evidence to establish that he violated the first element, to wit: that he organized, supervised, or managed five or more persons.[11] In rejecting Bass's claim, the district court found

---

[8] <u>Alix</u>, 86 F.3d at 435.

[9] <u>United States v. Hinojosa</u>, 958 F.2d 624, 628 (5th Cir. 1992).

[10] 21 U.S.C. § 848(c); <u>United States v. Garcia Abrego</u>, 141 F.3d 142, 164 (5th Cir. 1998).

[11] Bass asserts on appeal for the first time that there was insufficient evidence supporting the substantial-income element. This argument, however, is waived given his failure to raise it in his initial § 2255 motion. <u>See</u> <u>Tabita Chem. Co. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 384 n.9 (5th Cir. 2001). We also find his additional claim that there was insufficient evidence

8

that the evidence showed that Bass controlled six individuals:

> (1) Bounds: delivered cocaine for Bass;
>
> (2) Fisher: used vehicles rented by Bass to travel to Victoria to sell cocaine base derived from cocaine purchased from Bass, and listed KLB as an employment reference in an apartment rental application;
>
> (3) Kyles: purchased cocaine from Bass, which Kyles resold as cocaine base in Victoria, and also assisted Bass in locating the rental vehicle seized from Fisher;
>
> (4) Wade: purchased cocaine from Bass, which Wade resold as cocaine base in Victoria, and also used Bass as an employment reference with Bass's permission;
>
> (5) Paul Alix: paid through the KLB payroll and resold cocaine base derived from cocaine purchased from Bass; and
>
> (6) Steven Alix: purchased cocaine from Bass, which Kyles resold as cocaine base in Victoria, and also used Bass as a reference with Bass's permission.

On appeal, Bass urges his trial contention that his interaction with these individuals occurred in the context of either friendship or a buyer-seller relationship, neither of which is sufficient, he insists, to establish the managerial, supervisory, or organizational control required by § 848, the CCE statute.

Although § 848 is commonly referred to as the "King Pin Statute"[12] because "it is designed to apply to leaders of large-

---

supporting the continuing series of drug violations without merit; there were nine drug-trafficking convictions that served as the predicate offenses for Bass's CCE conviction. This is far more than the three convictions needed to establish a "series of violations." United States v. Lopez, 248 F.3d 427, 429 n.2 (5th Cir. 2001), cert. denied, 122 S. Ct. 222 (2001) (recognizing that a "series of violations" consists of three or more violations of the federal narcotics statutes).

[12] United States v. Johnson, 575 F.2d 1347, 1357-58 (5th Cir. 1978).

scale narcotics operations,"[13] a defendant need not have been the single ringleader of a drug enterprise.[14]  It is sufficient if a defendant has separate, individual relationships of control with at least five persons.[15]  Furthermore, the defendant need not "have directly or personally organized, supervised, or managed five people, or even have had personal contact with each underling."[16] If a defendant delegates authority to lieutenants and enforcers to do his managerial, supervisory, or organizational work, he is nonetheless exercising control over the extended drug-ring participants who are doing his bidding.[17]  Finally, in construing the terms of the CCE statute, we have maintained that "[t]he terms 'organized,' 'supervised,' and 'managed' are not words of art and should be interpreted according to their everyday meanings."[18]

In appealing the district court's finding that the evidence

---

[13] United States v. Phillips, 664 F.2d 971, 1013 n.62 (5th Cir. Unit B 1981).

[14] United States v. Sotelo, 97 F.3d 782, 789 (5th Cir. 1996).

[15] Phillips, 664 F.2d at 1013.

[16] United States v. Wilson, 116 F.3d 1066, 1088 (5th Cir. 1997) (citation omitted), rev'd in part on other grounds, United States v. Brown, 161 F.3d 256 (5th Cir. 1998) (en banc).

[17] See Hinojosa, 958 F.2d at 630 (noting that a defendant "may not insulate himself from CCE liability by carefully pyramiding authority so as to maintain fewer than five direct subordinates") (quoting United States v. Ricks, 882 F.2d 885, 891 (4th Cir. 1989)).

[18] United States v. Gonzales, 866 F.2d 781, 784 (5th Cir. 1989).

10

supporting his CCE conviction is sufficient, Bass raises an issue that has not yet been addressed by this court, viz., whether, alone and in the absence of additional indicia of control, a mere buyer-seller relationship is sufficient to establish liability under § 848. Although we have not yet ruled on this question, a substantial number of the other federal circuits have held that a "mere showing of a buyer-seller relationship, without more, is not sufficient under § 848" to satisfy the management, supervision, or organization element of § 848.[19] In these cases, activities that were merely "incidental to the buyer-seller relationship" were held insufficient to establish CCE liability.[20] In contrast, defendants have been found to possess the level of control prescribed by the CCE statute—and thus to go beyond a mere buyer-seller relationship—when they rented vehicles for others selling drugs,[21] used salesmen to distribute drugs,[22] used enforcers,[23] used drug

---

[19] United States v. Butler, 885 F.2d 195, 201 (4th Cir. 1989). See also United States v. Witek, 61 F.3d 819, 822 (11th Cir. 1995); United States v. Ward, 37 F.3d 243, 247 (6th Cir. 1994); United States v. Smith, 24 F.3d 1230, 1234 (10th Cir. 1994); United States v. Delgado, 4 F.3d 780, 783 (9th Cir. 1993).

[20] Witek, 61 F.3d at 823. See also Ward, 37 F.3d at 248-49 (discussing that defendant's providing instructions on meeting times and places for drug transactions, not profiting from the resale of drugs, and fronting cocaine to purchasers are all activities solely within the scope of the buyer-seller relationship).

[21] Ward, 37 F.3d at 248.

[22] Id. at 249; Smith, 24 F.3d at 1233; Butler, 885 F.2d at 201.

[23] Ward, 37 F.3d at 249.

11

couriers,[24] provided financial and logistical support to suppliers and purchasers,[25] and used collection agents to obtain drug payments.[26]  Each of these activities falls squarely within the common-sense meaning of managerial, supervisory or organizational control over underlings.

Recognizing that these activities are distinguishable from those of simply selling or purchasing drugs, we now join the other circuits that have held expressly that a buyer-seller relationship by itself, i.e., in the absence of some indicia of management, supervision or organization, is insufficient to establish liability under the CCE statute.  This rule is consistent with the plain meaning of the statute's requirement that a defendant must act "in concert with five or more other persons with respect to whom such [defendant] occupies a position of organizer, a supervisory position, or any other position of management."[27]  "A contrary interpretation would do violence to the common-sense meaning of the words 'organizer' and 'supervisor' and extend § 848's reach beyond

---

[24] Smith, 24 F.3d at 1233.

[25] Butler, 885 F.2d at 201.

[26] Witek, 61 F.3d at 823.

[27] § 848(c).  The rule we adopt today is also consistent with the rule of lenity if the statute's terms are deemed ambiguous. United States v. Kozminksi, 487 U.S. 931, 952 (1988); Witek, 61 F.3d at 822 (noting in interpreting the management requirement of § 848 that "the rule of lenity requires us to construe that statute narrowly").

the scope Congress intended."[28]

In joining those other circuits and embracing this rule, we are doing no more than making explicit that which we have previously implied. In United States v. Gonzales, co-defendant Stewart McGlinchey appealed his CCE conviction on the ground that he had only "a simple buyer-seller relationship with his customers."[29] The evidence revealed, however, that McGlinchey used street salesmen to distribute his cocaine, used recruiters to bring people into his drug ring, used former police officers for intelligence and protection, employed drug couriers, controlled the resale of the drugs that he sold to his distributers, provided bail for members of his drug ring, rented vehicles and apartments for subordinates, and used his legitimate business for drug deals and for processing drug proceeds.[30] In light of all that, we concluded that there was "ample evidence to support the jury's conclusion that McGlinchey organized five or more people in a criminal enterprise."[31] Our decision in Gonzales can be read to imply the rule that § 848 requires a showing of control greater than that involved in a mere buyer-seller relationship, given our confirmation that the evidence contradicted McGlinchey's claim of

---

[28] Witek, 61 F.3d at 822.

[29] Gonzales, 866 F.2d at 783.

[30] Id. at 783-84.

[31] Id. at 783.

13

only a buyer-seller relationship and affirmance of McGlinchey's CCE conviction.

In following the logic of Gonzales and construing the evidence in this case in the light most favorable to the government,[32] we find that Bass managed, supervised, or organized only three individuals—Bounds, Fisher and Kyles. Bounds actually was employed by Bass's legitimate business and delivered cocaine at Bass's direction. Fisher used vehicles rented by Bass in furtherance of the activities of the drug enterprise, was directed by Bass not to drive flashy automobiles, and listed KLB as his employer in apartment rental applications. Kyles spoke with Bass about the activities of the drug ring, was permitted to use Bass as an employment reference, falsely told police that he was employed at KLB, and was directed by Bass to locate and drive him to retrieve the rental car seized from Fisher by the Victoria police. All of these activities are the same or similar to those that evidenced managerial control in the cases in which other courts have applied the rule that more than a buyer-seller relationship is required to establish CCE liability.

Even when we draw all reasonable inferences in favor of the jury's verdict, we are convinced that a rational trier of fact could not have concluded that Bass's involvement with the other three drug dealers—Wade, Paul Alix, and Steven Alix—consisted of

---

[32] See Alix, 86 F.3d at 435-36.

14

anything more than a buyer-seller relationship. The evidence shows that these three men simply purchased cocaine from Bass and resold it as cocaine base in Victoria. Bass did not receive any additional monies or benefits from these resales as cocaine base. There is no evidence that Bass controlled the resale activities of these three individuals, such as by dictating the quantity, the asking price, or to whom the cocaine base would be sold. Beyond evidence of ordinary purchases and sales, the record is devoid of evidence of any control by Bass whatsoever over these three individuals' drug activities. The district court's conclusion to the contrary constitutes clear error.

Faced with a defendant similarly involved in a drug ring, the Sixth Circuit, in United States v. Ward,[33] reversed a CCE conviction on the basis of insufficient evidence. The defendant, Ward, was implicated in a widespread drug ring in which he fronted cocaine to his purchasers, rented vehicles used by his purchasers in their resale activities, provided meeting instructions, and used enforcers.[34] Even though renting cars and using enforcers evidenced managerial or supervisory control, the court ruled that Ward's fronting of drugs and providing meeting instructions were only incidental to a buyer-seller relationship.[35] Significantly, the

---

[33] 37 F.3d 243 (6th Cir. 1994), cert. denied, 514 U.S. 1030 (1995).

[34] Id. at 248-49.

[35] Id.

15

court also ruled that the resale of drugs with no pass-through of profits back to Ward was insufficient evidence of the control required by § 848.[36]  Distinguishing another case relied on by the government, in which a defendant's conviction under § 848 was upheld on resale evidence,[37] the Ward court noted that the evidence in the prior case "reflected control of the distribution of the drugs" throughout the entire drug enterprise, "whereas the evidence here shows only that Ward supplied drugs to Hicks, who sold them to any buyers he could find, not to buyers determined or identified by Ward."[38]

As in that case, Bass supplied Wade, Stephen Alix, and Paul Alix with drugs, which they resold to whatever buyers they could find in Victoria.  This was done with Bass's knowledge but not under his control or at his direction.

As for the aforementioned Paul Alix, we acknowledge that it might still be possible to draw a reasonable inference in favor of the jury verdict that he was controlled by Bass.  Paul Alix received several payroll checks from KLB, despite not working there.  And it would be odd, to say the least, for Bass to pay Paul Alix if he were nothing more than an ordinary buyer: in the typical buyer-seller relationship, payments flow from purchaser to

---

[36] Id. at 249.

[37] See United States v. Adamo, 742 F.2d 927 (6th Cir. 1984).

[38] Ward, 37 F.3d at 250.

16

supplier, not the other way around. These faux salary payments therefore may have been compensation for Paul Alix's activities in the drug ring, which could lead to a reasonable inference of some form of supervisory or organizational control by Bass.

Even if we assume arguendo that Paul Alix was under the supervision and control of Bass, however, this would still total only four individuals who were managed, supervised, or organized by Bass: Bounds, Fisher, Kyles, and Paul Alix. This is one short of § 848's requirement that a defendant control "five or more other persons."[39] Thus, by the plain terms of the CCE statute, the evidence was insufficient to support Bass's conviction.

It follows that, in failing to raise this issue on appeal, Bass's counsel performed deficiently. In fact, appellate counsel for Bass's two co-defendants, Bounds and Paul Alix, did challenge the sufficiency of the evidence supporting their clients' drug conspiracy convictions.[40] Yet Bass's own appellate counsel failed to challenge the sufficiency of that same evidence supporting Bass's CCE conviction.[41]

As for Strickland's second prong, Bass was prejudiced by this

_____

[39] § 848(c) (emphasis added).

[40] Alix, 86 F.3d at 435-36.

[41] The evidence is sufficient to support Bounds's and Paul Alix's narcotics conspiracy convictions, see id., and it is sufficient to support Bass's nine narcotics conspiracy convictions, but, as we indicate, this same evidence is insufficient to support Bass's CCE conviction.

deficient performance, albeit minimally. As Bass is serving all of his sentences concurrently, the sentencer did not impose a harsher prison term as a result of the CCE conviction; Bass's total time of incarceration will not be shortened as a result of our decision today to vacate his CCE conviction. In addition to prison, however, Bass was sentenced to pay an additional $50 for his CCE conviction——a sum that he would not have been ordered to pay were it not for the CCE conviction.

C.  Double Jeopardy

We also granted Bass a COA on his contention that his counsel's failure to mount a double-jeopardy challenge of his convictions for both conspiracy and CCE constituted a deficient performance and thus was ineffective assistance. Bass notes correctly that conspiracy is a lesser included offense of a CCE conviction.[42] Consequently, he insists, separate convictions and sentences for both conspiracy and CCE violates the Constitution's Double Jeopardy Clause.[43] Today's vacatur of Bass's CCE conviction, however, eliminates the basis of this claimed constitutional defect, making moot the second issue of Bass's COA.

### III.
### CONCLUSION

As Bass's CCE conviction was not supported by sufficient evidence, his counsel's performance was deficient in failing to

---

[42] Wilson, 116 F.3d at 1087.

[43] Gonazales, 866 F.2d at 786.

raise this issue on direct appeal. And, Bass was prejudiced by that deficient performance when he was sentenced to pay an additional $50 assessment. Accordingly, we must reverse the district court's dismissal of Bass's § 2255 motion, vacate Bass's CCE conviction and sentence, and remand to the district court with instructions to reduce his total assessment to $600 for the remaining 14 counts for which Bass's convictions stand.

DISMISSAL REVERSED; SENTENCE VACATED in part; REMANDED with instructions.