# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-50664

CONSOLIDATED WITH

No. 23-50714

_____

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARK JOSEPH UHLENBROCK,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 5:16-CR-389-1, 5:21-CR-84-1

_____

Before SMITH, STEWART, and DUNCAN, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

A jury convicted Mark Uhlenbrock of violating 18 U.S.C. § 2261A-(2)(B) for publishing his ex-girlfriend's nude images and videos and exhibitionist and masturbatory stories that he wrote in her name.  We affirm.

I.

A.

From May to September 2020, Uhlenbrock posted nude photographs and videos of YT, his ex-lover, on Reddit.  Some of those images she had

voluntarily sent to him during their romantic relationship, but some he surreptitiously recorded. She never allowed him to share any of the media or to post it online.

Accompanying those pictures and videos, Uhlenbrock shared stories that he drafted in the first-person using YT's maiden name. They further identified her by occupation, employer, and state of residence. Writing as YT, he claimed to be an "addicted" "exhibitionist." For example, he stated, "I am a real US Airline flight attendant. . . . Here, I share clothed to naked pics, 'G' and 'R' rated home videos and erotic stories that you can read about my exhibitionist fantasies." Another post read, "I enjoy stripping nude and masturbating for men I meet on my layovers. It's my favorite way of sexually expressing and satisfying myself." He invited men to look for YT on their flights and sexually to proposition her.

A close family friend alerted YT to Uhlenbrock's posts, aware that 2020 was not the first time that Uhlenbrock had published YT's intimate content. YT "immediately started searching for these photographs to find out where they were and how far they had spread." She took an entire week off work and "spent eight, nine hours a day scouring the internet to find these images to see how bad this was going to be again." She contacted the FBI to report Uhlenbrock's conduct.

## B.

A grand jury indicted Uhlenbrock on one count of cyberstalking under 18 U.S.C. § 2261A(2)(B), which states, in relevant part,

> Whoever . . . with the intent to . . . harass[] [or] intimidate . . . engage[s] in a course of conduct that . . . causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to a person . . . shall be punished as provided . . . .

No. 23-50664
c/w No. 23-50714

Uhlenbrock moved to dismiss the indictment on First Amendment and vagueness grounds. The district court denied the motion.

FBI Agent Thompson was the first of two witnesses to testify. He detailed his investigation into Uhlenbrock's 2020 posts. After YT brought the photographs and videos to his attention, Thompson identified Uhlenbrock through IP addresses linked to the relevant Reddit accounts.

Thompson then testified that Uhlenbrock had pleaded guilty in 2016 to violating the same statute through similar conduct spanning years. Uhlenbrock admitted to posting YT's nude photographs and videos, the agent explained, and acknowledged that he had "inten[ded] to harass and intimidate YT." The district court instructed the jury to consider that past conduct only to determine Uhlenbrock's intent.

YT testified next. She described how her relationship with Uhlenbrock had started and ended. They had met when both had been working for the same airline; they began dating in 2002. During the relationship, she shared intimate photographs and videos with him. In 2006, however, their relationship changed when she discovered that he was posting her photos and videos on pornographic websites and that he was surreptitiously recording naked videos of her. Again, the district court instructed the jury to consider that testimony only to determine Uhlenbrock's intent or state of mind.

In 2007, she testified, after she had ended their relationship, she again found her images on pornographic websites. Confronting Uhlenbrock, she "asked why he was doing this" and "asked him to stop." She "was humiliated and embarrassed . . . and fearful that [she] would be discovered," she told him. Uhlenbrock was "apologetic."

Nonetheless, YT explained to the jury, Uhlenbrock continued to publish her intimate content. YT sued him and obtained a civil injunction. Though he again "agreed not to post any more sexual images of YT," he did

3

not stop.  In 2013, she again found those same images and videos online.  In addition to that visual media, Uhlenbrock had drafted accompanying "stories" that "were very lengthy and lewd and sexually graphic."  She finally contacted the FBI.

YT then recounted for the jury that Uhlenbrock had pleaded guilty in 2016 to one count of cyberstalking under § 2261A(2)(B).  Addressing him after his plea, she told him "[t]hat this [conduct] caused [her] much emotional distress and fear and humiliation," and that she had contemplated killing herself "to make this go away."  He responded that he was "sorry."  "I more than embarrassed you, I humiliated you. . . . I caused you to be fearful.  I have affected your social life.  I have affected your motivation to go to work."

During YT's testimony, Uhlenbrock moved for a mistrial.  The district court denied the motion but reiterated to the jury that it could consider his past conduct only to decide whether he had the "state of mind or intent necessary to commit the crime charged in this indictment."

Turning to Uhlenbrock's 2020 conduct, YT testified that a family friend had come across her nude pictures on Reddit.  Learning about them, YT felt "instant fear and disgust," and she "feared for [her] safety because [her] private and personal information was in these pornographic stories and [she] feared that anyone who could see these could find [her] at home or at [work]."  She "became very reclusive and paranoid" and "overprotect[ive of] her grandchildren."

Uhlenbrock moved for a judgment of acquittal, contending that the government had presented insufficient proof to establish YT's substantial emotional distress and Uhlenbrock's intent to harass.  The district court denied the motion.

A jury convicted Uhlenbrock, and the district court sentenced him to

No. 23-50664
c/w No. 23-50714

60 months' imprisonment, three years' supervised release, and restitution. The court also revoked his supervised release in his 2016 case and resentenced him to 12 months' imprisonment. Uhlenbrock appealed both the new conviction and the revocation of supervised release.

## II.

Uhlenbrock contends that § 2261A(2)(B), as applied to his conduct, violates the First Amendment because his internet posts were speech.[1] The government doesn't contest that the posts constituted speech but, instead, it counters that they were unprotected speech: defamation, speech integral to criminal conduct, and obscenity. We review as-applied First Amendment challenges *de novo*. *United States v. Petras*, 879 F.3d 155, 166 (5th Cir. 2018).

The First Amendment restricts the government from punishing speech outside of a "few historic and traditional categories of expression long familiar to the bar." *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality opinion) (cleaned up). Such categories of unprotected speech include defamation, speech integral to criminal conduct, and obscenity. *Id.* (collecting cases).

We consider first whether Uhlenbrock's speech constituted unprotected defamation. The familiar elements of defamation are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

---

[1] Uhlenbrock first invokes *Counterman v. Colorado*, 600 U.S. 66 (2023), which, in his view, holds that stalking statutes can apply to speech only where the speech constitutes a true threat. He butchers that case. The Court addressed only whether the government needed to prove a particular *mens rea* for a threat to constitute unprotected speech. *Id.* at 72.

5

No. 23-50664
c/w No. 23-50714

Restatement (Second) of Torts § 558 (Am. Law Inst. 1977).

Uhlenbrock's speech was false. He claimed that YT had authored his internet posts, though she had not. He wrote, for example, "I am a real US Airline flight attendant. . . . Here, I share clothed to naked pics, 'G' and 'R' rated home videos and erotic stories that you can read about my exhibitionist fantasies."

He also falsely called her an "addicted" "exhibitionist." YT testified that, upon discovering her naked photos and videos online in 2007, she was "humiliated and embarrassed by this and fearful that [she] would be discovered." She said that, after court proceedings following his 2016 conviction for the same conduct, she "wanted to kill [her]self to make this go away." And after she discovered his 2020 posts, she felt "instant fear and disgust that opened that wound again." She became "reclusive and paranoid" and "hid[] out under a baseball hat." That is not the reaction of an addicted exhibitionist.

Uhlenbrock's speech was also "defamatory." He "impute[d] . . . unchastity" to YT by conveying that she freely shared her naked pictures and videos with the internet, inviting men to look for her when they flew, and suggesting that she would strip and masturbate for them.[2]

His speech also "concern[ed]" YT. Restatement (Second) of Torts § 558 (explaining that defamation is speech "concerning another"). He insists that his Reddit posts could not be linked to her. But the images and videos showed her face. He signed the posts with her real maiden name, real occupation, real employer, and real state of residence. People

---

[2] *See* Restatement (Second) of Torts § 574, cmt. b (cleaned up) (explaining that slander includes statements that falsely "impute[] any form of unchastity to a woman, married or single").

6

could, and did, link the posts to YT. As Uhlenbrock admits, YT discovered his 2020 posts because a family friend alerted her to them after recognizing her in them.

His speech comfortably satisfies the remaining elements of defamation. He "published" his speech to a third party when he posted to the internet. He knew that his statements were false. And his speech was actionable without "special harm" because it imputed "lascivious or grossly immodest conduct" to her.[3]

Because Uhlenbrock's speech constituted unprotected defamation, the application of § 2261A(2)(B) to his speech did not violate the First Amendment. We need not decide whether Uhlenbrock's speech was integral to criminal conduct or obscenity.

### III.

Uhlenbrock contends that § 2261A(2)(B) is unconstitutionally vague because it fails to define "substantial emotional distress" or to clarify when conduct is "reasonably expected" to cause such distress. We review *de novo* facial challenges to the constitutionality of a statute. *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

Under "the proper procedure for analyzing a facial vagueness challenge," we first "determine whether the [statute] reaches a substantial amount of constitutionally protected conduct." *Id.* (cleaned up). If it does not, then we consider whether the statute "is impermissibly vague in all of

---

[3] *See* RESTATEMENT (SECOND) OF TORTS § 569 cmt. d ("It is actionable per se to accuse in libelous form" a person "of any sexual misconduct[.] . . . Any abnormal sex conduct or tendency comes within the rule . . . whether or not it constitutes a crime. So too, it is libelous to charge another with . . . any kind of lascivious or grossly immodest conduct.").

its applications." *Id.* "[A] reviewing court should examine the complainant's conduct before analyzing other hypothetical applications of the law because a party who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 613 (cleaned up). "That rule makes no exception for conduct in the form of speech." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010).

Because Uhlenbrock does not contend that § 2261A(2)(B) is unconstitutionally overbroad, we turn to whether it is impermissibly vague. *See Clark*, 582 F.3d at 612–13.

"[S]ubstantial emotional distress" is an "easily understood term[]." *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015); *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (explaining that "substantial emotional distress" is "not [an] esoteric or complicated term[]"). A familiar term from tort law, "[e]motional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and nausea." Restatement (Second) of Torts, § 46 (Am. Law Inst. 1965).

So is the term "reasonably expected." Indeed, we have explained that potential vagueness is not created but, instead, "constitutionally *remedied*" "by the inclusion of [a] reasonable person standard." *Munn v. City of Ocean Springs*, 763 F.3d 437, 441 (5th Cir. 2014) (emphasis added).

Under those definitions, § 2261A(2)(B) "clearly proscribed" Uhlenbrock's conduct. *Clark*, 582 F.3d at 613. He posted YT's nude photographs and videos, after she had gone to great lengths to stop him from posting. Those photos and videos—some of which he captured without her permission—exposed her breasts, vagina, and buttocks in sexually charged

No. 23-50664
c/w No. 23-50714

poses. Some showed her masturbating. Her face was visible in most. Alongside those pictures and videos, he appended stories that invited men to look for her when they flew, suggesting that she would strip and masturbate for them if they winked at her.

That conduct alone would be "reasonably expected" to cause YT to experience "substantial emotional distress." But he also identified her to the world by signing the posts with her real maiden name, real occupation, real employer, and real state of residence. It beggars belief that, by using YT's maiden name, he "effectively eliminat[ed] the possibility" that she would discover his posts and, thus, experience any distress. Again, as Uhlenbrock acknowledges, YT's family friend found his posts, identified YT in them, and alerted her to them.

Because § 2261A(2)(B) "clearly proscribed" Uhlenbrock's conduct, he "cannot complain of the vagueness of the law as applied to the conduct of others." *See id.*

## IV.

Uhlenbrock complains that the district court allowed YT to testify about his prior bad conduct. That, he says, violated Federal Rule of Evidence 404(b), constructively amended his indictment, and violated his right to avoid double jeopardy. We reject each theory in turn.

## A.

We review the district court's admission of evidence under Federal Rule of Evidence 404(b) for abuse of discretion; "[t]his review is necessarily heightened in criminal cases." *United States v. Peterson*, 244 F.3d 385, 392 (5th Cir. 2001).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person

9

acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the "evidence may be admissible for another purpose, such as proving . . . intent." Fed. R. Evid. 404(b)(2).

Reviewing a Rule 404(b) challenge, we must first "determin[e] that . . . the evidence is relevant to an issue other than the defendant's character." *United States v. Meyer*, 63 F.4th 1024, 1040 (5th Cir. 2023) (cleaned up). Next, we must determine that the evidence "possesses probative value that is not substantially outweighed by its undue prejudice." *Id.* On the second prong, "we consider (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions, in addition to the overall prejudicial effect of the extrinsic evidence." *Id.* at 1040–41 (cleaned up).

The government offered YT's testimony to establish that Uhlenbrock intended to harass or intimidate her. Uhlenbrock does not contest that relevance. And contrary to Uhlenbrock's suggestion, it was not unduly prejudicial.

The government needed YT's testimony. *See id.* (considering government's need for evidence). She recounted the "fear" and "humiliation" she suffered each time that Uhlenbrock had posted her intimate images in prior years. She told the jury how she had begged him for years, sued him, and even reported him to the FBI to stop him from sharing her naked photos. She thus established that Uhlenbrock was aware of her agony and, more importantly, of how she would suffer if he again published her pictures in 2020. The government could accordingly prove that Uhlenbrock intended "to disturb [YT] persistently; torment, as with troubles or cares; bother continually; pester; persecute" her. *Conlan*, 786 F.3d at 386 n.7 (defining "harass").

No. 23-50664
c/w No. 23-50714

In addition, YT's testimony helped to dispel a myth that Uhlenbrock concocted at trial. He says that he had no idea that YT would ever see the pictures and, thus, that he couldn't have intended to harass her. But testifying that she had found her naked images online every time he had published them before, YT demonstrated that Uhlenbrock knew that she would again find them when he published them in 2020.

He protests that the agent had already testified about Uhlenbrock's 2016 guilty plea for his past conduct and, thus, that YT's testimony was superfluous. Not so. The agent read from Uhlenbrock's plea agreement, which merely recited the legal elements of his 2016 offense.

The district court's limiting instructions further reduced any prejudice to Uhlenbrock. *Meyer*, 63 F.4th at 1041 (considering the district court's limiting instructions). Repeatedly, during testimony and before deliberations, the court stressed that the jury could consider Uhlenbrock's prior conduct to determine only his intent and state of mind.

The district court did not abuse its discretion by admitting YT's testimony of Uhlenbrock's prior conduct.

## B.

Uhlenbrock says that the district court constructively amended his indictment by allowing YT to testify about his pre-2020 similar conduct. He presses that the jury convicted him of that prior conduct.

We review *de novo* a claim of constructive amendment of an indictment. *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012). "A constructive amendment may occur when the trial court[,] through its instructions and facts it permits in evidence, allows proof of an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment." *Id.* (cleaned up).

That did not happen here because "the district court instructed the jury that it was to consider only the crime that was charged in the indictment." *United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994). Uhlenbrock's 2020 indictment, in turn, charged him only for his 2020 course of conduct. And the court carefully stressed repeatedly "that the jury was to consider [other acts] evidence only as it bore on the [defendant's] intent or motive." *Id.*

## C.

Uhlenbrock claims that YT's testimony allowed the jury to convict him again for his pre-2020 conduct for which he had already been convicted. That violated the Double Jeopardy Clause, he says, which "forbids the duplicative prosecution of a defendant for the 'same offence.'" *United States v. Felix*, 503 U.S. 378, 385 (1992) (quoting U.S. CONST. amend. V). We review a claim of double jeopardy *de novo*. *United States v. Gonzales*, 40 F.3d 735, 737 (5th Cir. 1994) (per curiam), *superseded on other grounds as recognized by United States v. Dunigan*, 555 F.3d 501, 504–05 (5th Cir. 2009).

But "the introduction of relevant evidence" under Rule 404(b) "is not the same thing as prosecution for that conduct." *Id.* at 387. "[D]ouble jeopardy principles are [thus] not implicated" here. *United States v. Deshaw*, 974 F.2d 667, 675 n.47 (5th Cir. 1992).

## V.

Uhlenbrock contends that the evidence was insufficient to allow a reasonable jury to conclude that he (1) intended to harass or intimidate YT or that he (2) caused her substantial emotional distress.

Reviewing a verdict for sufficiency of the evidence, we ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir.

2002) (cleaned up). We "view[] all evidence in the light most favorable to the government with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Id.* (cleaned up).

## A.

The jury had sufficient evidence to conclude that Uhlenbrock intended to harass or intimidate YT. Each time he had posted her nude media in prior years, she discovered it. A rational jury could conclude that he expected that she would also learn about his 2020 Reddit posts. Likewise, because he knew the "humiliation" and "fear" that she had suffered in past years, a rational jury could conclude that he expected to cause the same result this time, too. The jury could thus conclude that he intended "to disturb [YT] persistently; torment, as with troubles or cares; bother continually; pester; persecute" her or "to make timid" or "fill [her] with fear." *Conlan*, 786 F.3d at 386 n.7 (defining harass and intimidate).

A rational jury could also conclude that he intended to harass her by sending strange men to find her. He invited readers to "keep an eye out for [YT] when" flying on her airline. "Who knows where a suggestive wink will lead. You could get a sexy strip tease from a pretty Latina flight attendant who, after an erotic nude dance, will lie back, spread her legs . . . ."

Resisting that conclusion, Uhlenbrock says that his posts "were not directed to YT; they were posted in a [forum] that the alleged victim only found out about when a close family friend provided a link." But the question is "whether any rational trier of fact could have found" the requisite intent "beyond a reasonable doubt." *Bass*, 310 F.3d at 325. The answer is yes.

## B.

Uhlenbrock avers that the government presented insufficient evidence that YT suffered substantial emotional distress.

To begin, a jury could convict if it found that Uhlenbrock's conduct was "reasonably expected" to cause substantial emotional distress, even if it did not cause such distress. § 2261A(2)(B) (punishing courses of conduct that either "causes" or "would be reasonably expected to cause" distress).

And a rational jury could conclude that Uhlenbrock's conduct was "reasonably expected to cause" such distress to YT. § 2261A(2)(B). As we have recounted several times already, Uhlenbrock published her nude photographs, masturbation videos, and exhibitionist fantasies to internet forums. He signed them with her maiden name and told readers her occupation and employer. He invited men to look for her when they flew. People could link the posts to YT; she found out about them from a family friend.

Regardless, a rational jury had enough evidence also to conclude that Uhlenbrock's conduct "cause[d] . . . substantial emotional distress." § 2261A(2)(B). When YT saw the 2020 posts, she "immediately started searching" for them and "spent eight, nine hours a day scouring the internet to find these images to see how bad this was going to be again." Seeing the pictures brought her "instant fear and disgust." She "feared for [her] safety" because her "private and personal information was in these pornographic stories and [she] feared that anyone who could see these could find [her] at home or at [work]." She "became very reclusive and paranoid," covering her face "under a baseball hat" and "not wearing any make-up." "Overprotect[ing] her grandchildren," she controlled what they could wear and who could photograph them. The posts disturbed her so much that she contacted the FBI.

Any emotional distress that YT suffered, suggests Uhlenbrock, was caused by his "previous postings" for which he had already been convicted. For support, he points to YT's testimony that she felt "instant fear and disgust that opened that wound *again*." And he says that he "had reason to

believe that re-posting these images may not cause substantial emotional distress." That is dubious. But again, we ask whether a rational jury "could have found . . . beyond a reasonable doubt" that his course of conduct caused, or was reasonably expected to cause, such distress. *See Bass*, 310 F.3d at 325. The answer, again, is yes.

## VI.

Uhlenbrock posits that the district court erred by refusing to use his proposed jury instructions. We review "[t]he district court's decision to give or exclude a jury instruction . . . for abuse of discretion." *United States v. Arthur*, 51 F.4th 560, 567 (5th Cir. 2022).

A court abuses its discretion when it refuses to adopt a defendant's suggested jury instruction that is "(1) substantively correct, (2) not substantially covered in the jury charge, and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense." *Id.* (cleaned up). "A district court does not err, however, if the jury charge tracks the Fifth Circuit Pattern Instructions and correctly states the law." *Id.* (cleaned up).

Uhlenbrock complains that the court erred by refusing to award his preferred instruction on intent. He wanted the court to say that the government had to "prove . . . that the defendant intended to harass the complaining witness as opposed to being motivated by some other reason" and that Uhlenbrock "intend[ed] the specific result." He complains that the court's instruction allowed the jury to convict even if he intended only to post but not to harass or intimidate.

But Uhlenbrock's suggested instruction was "substantially covered in the jury charge," even if it deviated slightly from the Pattern Instructions. *Id.* The court instructed the jury it needed to find that he had "[acted] with the intent to kill, injure, harass, intimidate, or place under surveillance with

intent to kill, injure, harass, or intimidate another person." Contrary to Uhlenbrock's fear, a jury couldn't convict if it found that he intended only to post.

He also laments that the district court refused to award a second limiting instruction that, he says, would have "clearly delineate[d]" that the jury could only convict for "acts occurr[ing] between May and September of 2020." But that desired instruction was also "substantially covered in the jury charge." *Id.* The court stressed that Uhlenbrock was not on trial for any other conduct besides the conduct charged in the indictment. That indictment charged him for a course of conduct "[f]rom on or about May 2020 to September 2020." And the court repeatedly instructed the jury during testimony, as well as in its jury charge, that it could use Uhlenbrock's prior conduct to decide only his intent or state of mind.

The district court did not err in refusing Uhlenbrock's preferred jury instructions.

## VII.

Uhlenbrock also noticed an appeal of the revocation of his supervised release in his 2016 criminal case. Having failed to brief his argument, he has abandoned that challenge. *See United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020).

\* \* \* \* \*

The judgments are AFFIRMED. All pending motions are DENIED AS MOOT.